**David J. POWELL and Estate of Jeane D. Powell, Deceased, David J. Powell, Executor, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 85–4237.

United States Court of Appeals, Fifth Circuit.

June 11, 1986.

Rehearing Denied Aug. 7, 1986.

William S. Lee, Claude R. Wilson, Jr., Dallas, Tex., for petitioners-appellants.

Bruce R. Ellisen, Atty., Glenn L. Archer, Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Michael L. Paup, Chief, Appellate Section, Gilbert S. Rothenberg, Atty., Robert P. Ruwe, Director, Tax Litigation Div., Office of Chief Counsel by Dan Henry Lee, Chief, Washington, D.C., David A. Hampel, Counsel for I.R.S., Dallas, Tex., for respondent-appellee.

Before THORNBERRY, RUBIN, and JOLLY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue is the standard to apply in determining the right to recover attorney's fees by a taxpayer who prevails against the Internal Revenue Service in tax litigation. The IRS contends that the test is whether the government's position taken after litigation has begun is reasonable and the Tax Court adopted this interpretation of the controlling statute. Because the Tax Court should also take into account the government's administrative position that necessitated the instigation of Tax Court litigation, we reverse the Tax Court's judgment denying the taxpayer attorney's fees and remand for application of this test.

I.

David J. Powell and Jeane D. Powell, who was then his wife and who is now deceased, invested $5,000 in WPGMA, a joint venture, which became a limited partner in INAS Associates, a coal mining limited partnership. The taxpayers claimed a deduction of $25,034 on their 1976 tax return as their share of the losses sustained by INAS. Most of INAS's 1976 loss was represented by a nonrecourse note it issued in payment for a coal royalty.

The IRS determined that the taxpayer's 1976 deduction was improper because, in addition to other reasons, the taxpayers had no "good faith expectation of profit" from their investment in INAS and because "the transaction for which [INAS] was organized lack[ed] economic reality." In 1980, the IRS issued a notice of deficiency to the taxpayers for their 1976 tax in the amount of $12,892.51. Powell and the IRS subsequently reached an agreement that settled part of their differences: Powell waived his right to file a Tax Court petition

challenging the notice of deficiency. In return, the IRS agreed to freeze collection of the 1976 assessment until INAS, the limited partnership, had been audited and all partnership adjustments had been made. Powell reserved the right, if the deficiency assessment were not then withdrawn, to pay the deficiency and seek a refund in federal district court or the Court of Claims.

The IRS completed its audit of INAS in August 1982 and determined that the deductions claimed by the taxpayers as a result of INAS's losses should be disallowed. To settle the 1976 case, the IRS offered by letter to let the taxpayers deduct the $5,000 they had invested in INAS. Powell's letter in response stated: "Please make no further contacts with me other than to schedule a date for court, or similar 'within the service' forum with *informed, senior* people authorized to put an end to this agony." The IRS interpreted this response as a rejection of its settlement offer. In its brief, the IRS states that, since Powell made no counter-offer, a "conference would have accomplished nothing."

The IRS then, in January 1983, issued a notice of deficiency for the taxpayers' *1977* return in the amount of $12,240.53. The "Explanation of Items" accompanying the notice stated, in effect, the alternative position of the IRS, that, if some court decided that the INAS nonrecourse note (which had been the basis for the 1976 deficiency) *had* economic substance, then it was the IRS position that the same note was later forgiven or became unenforceable in 1977 and the taxpayers consequently realized 1977 income in the amount of $20,998.57, their share of the nonrecourse note. The IRS recognized that this 1977 income adjustment was inconsistent with its primary position, which disallowed the entire $25,034 INAS loss claimed by the taxpayers in *1976* (i.e., the 1976 disallowance denied tax effect to the note in the first instance). However, it asserts that the purpose of the 1977

adjustment was to protect the government's interest in the event the Powells successfully challenged the 1976 disallowance in a subsequent refund suit by establishing that the nonrecourse note did, in fact, have economic substance.

Powell filed a timely petition in the Tax Court seeking redetermination of the deficiency in the 1977 return. Soon afterward Powell and the IRS entered into settlement negotiations involving both the 1976 and 1977 notices of deficiency. In May 1984, they agreed that the taxpayers' $25,034 deduction for 1976 would be reduced to $5,000, the amount of their investment in INAS. In return, the IRS withdrew the notice of deficiency for 1977. After taking account of various undisputed adjustments, the parties agreed the taxpayers had overpaid their 1977 taxes by $238.34.

Powell then sought to recover the litigation costs he had incurred in presenting his 1977 case to the Tax Court. Powell offered three bases for his charge that the IRS position had been unreasonable: (1) the IRS notice of deficiency for the 1977 return disallowed deductions that Powell had not taken on the return; (2) the IRS repeatedly failed to respond to Powell's request for an explanation or a conference; and (3) the 1977 notice of deficiency required Powell to instigate the Tax Court litigation.[1] The Tax Court found that the third stated basis was merely informative and did not constitute an allegation of unreasonableness, and the second concerned actions taken by the IRS before the petition was filed and, therefore, could not be considered as a basis for an unreasonableness finding. Finally, the Tax Court found the first stated basis without merit because the 1977 adjustment involved additional *income* in the amount of $20,998.57, not disallowed *deductions*. The Tax Court apparently construed the first allegation of unreasonableness as a complaint by Powell

1. Tax Ct.R. 231(b)(3), *reprinted in* 26 U.S.C.A. foll. § 7453 (West Supp.1985) (motion for litigation costs to include "clear and concise statement of each reason why the moving party alleges that the position of the Commissioner in that action was unreasonable, and a statement of facts ... to support each of these reasons").

that this additional amount of income was not shown on their returns and dismissed it with the following statement, "It is obvious that this amount was not on the return because if it had been reported no adjustment to income would have been made."

Powell challenges the Tax Court's judgment on the basis that the court failed to consider, in its determination of reasonableness, the administrative position of the government that engendered the civil action. The three allegations of unreasonableness asserted by Powell in the Tax Court all refer, at least in part, to the position of the government before litigation. The Tax Court, however, held that, under the controlling statute, 26 U.S.C. § 7430, "the taxpayer must establish that the Commissioner's position *after the petition was filed* was unreasonable."

## II.

Section 7430 of the Internal Revenue Code permits a "prevailing party"[2] to recover litigation costs incurred in a tax case against the United States. To be a prevailing party, a litigant must show, among other things, that "the position of the United States in the civil proceeding was unreasonable."[3] The crucial issue in this case is what is meant by the phrase "civil proceeding" in § 7430(c)(2)(A)(i). The government asserts that the phrase permits the court to examine only the position taken by it "during the litigation," while Powell argues that the IRS position adopted at the highest administrative level must also be examined, because this is what engenders the court action.

Courts have interpreted the statute differently. The First Circuit and several district courts have held that both the IRS's prelitigation position and its litigation position should be examined for reasonableness.[4] By contrast, the District of Columbia Circuit, the Tenth Circuit, several district courts, and the Tax Court have read the statute to permit only the government's litigation position to be examined.[5]

Analysis of the issue must begin with the language of § 7430. The phrase "civil proceeding" is not defined in the statute. The government, however, points out that subsection (a) of § 7430 provides that the statute applies to "any civil proceeding which is ... brought in a court of the United States." It is reasonable to assume that the phrase "civil proceeding" in § 7430(c)(2)(A)(i), the crucial provision here, has the same meaning as it does in § 7430(a), that is, court-related proceedings only, not administrative proceedings.[6] But as Judge Merhige observed in *Finney v. Roddy*,[7] "while reasonable, this is not a necessary conclusion." The IRS position, however, derives additional support from § 7430(c)(1)(A)(ii) & (iv), which refers to the

---

2. 26 U.S.C. § 7430(c)(2).

3. 26 U.S.C. § 7430(c)(2)(A)(i).

4. *See Kaufman v. Egger*, 758 F.2d 1, 4 (1st Cir.1985); *Finney v. Roddy*, 617 F.Supp. 997, 1000–02 (E.D.Va.1985); *Roggeman v. United States*, 85–2 U.S.Tax Cas. (CCH) ¶ 9473 (N.D.Ill. 1985); *Rosenbaum v. IRS*, 615 F.Supp. 23 (N.D. Ohio 1985); *Sharpe v. United States*, 607 F.Supp. 4 (E.D.Va.1984); *Penner v. United States*, 584 F.Supp. 1582 (S.D.Fla.1984); *Hallam v. Murphy*, 586 F.Supp. 1, 3 (N.D.Ga.1983).

5. *See Baker v. Commissioner*, 787 F.2d 637, 641 & n. 8 (D.C.Cir.1986); *United States v. Balanced Financial Management, Inc.*, 769 F.2d 1440, 1450 (10th Cir.1985); *Ewing & Thomas, P.A. v. Heye*, 618 F.Supp. 648 (M.D.Fla.1985); *Walsh v. United States*, 56 A.F.T.R.2d (P–H) 5370 (D.Minn. 1985); *Contini v. United States*, 55 A.F.T.R.2d (P–H) 419 (N.D.Cal.1984); *Brazil v. United States*, 54 A.F.T.R.2d (P–H) 5707 (D. Or.1984) [Available on WESTLAW, DCTU database]; *Zielinski v. United States*, 54 A.F.T.R.2d (P–H) 5132 (D.Minn.1984) [Available on WESTLAW, DCTU database]; *Eidson v. United States*, 53 A.F.T. R.2d (P–H) 841 (N.D.Ala.1984) [Available on WESTLAW, DCTU database]; *cf. Peavy v. United States*, 625 F.Supp. 974 (D.Colo.1986). *See generally* Langstraat, *Collecting Attorney Fees From the Government in Tax Litigation: An Analysis of the Winners and Prospects for the Future*, 17 St. Mary's L.J. 395 (1986).

6. *See Ewing & Thomas, P.A. v. Heye*, 618 F.Supp. at 649–50.

7. 617 F.Supp. 997, 1000 n. 4 (E.D.Va.1985).

award of "reasonable litigation costs" incurred "in connection with the civil proceeding.[8] "Civil proceeding" as used in this clause clearly refers only to court-related litigation costs.

Section 7430 was added to the Internal Revenue Code by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA).[9] The effective date provision of the statute states, "The amendments made by this section shall apply to *civil actions or proceedings* commenced after February 28, 1983."[10] Referring to this language, the Conference Committee Report notes that § 7430 "applies to *civil tax litigation,* including U.S. Tax Court cases, begun on or after March 1, 1983."[11] It is clear that in this context, Congress also did equate "civil actions or proceedings" with "civil tax litigation."

The debate, however, has another side. The reference in § 7430(a) to "any civil proceeding" is similar to the words used in the attorney fees provision of the Equal Access to Justice Act.[12] That Act, before it was amended in 1985,[13] had been construed by some circuits to require a court to consider events leading up to litigation in determining whether the government's position was substantially justified.[14] With parallel clauses emphasized, the text of directly relevant parts of the two statutes is as follows:

**§ 7430(a)**

In the case of *any civil proceeding* which is—

(1) *brought by or against the United States* in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and

(2) *brought in a court of the United States* (including the Tax Court and the United States Claims Court),

the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding.

**§ 7430(c)(2)(A)**

The term "prevailing party" means any party to any proceeding described in [§ 7430(a)] . . . which — (i) establishes that the *position of the United States in the civil proceeding was unreasonable.*

**EAJA § 2412(d)(1)(A)**

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in *any civil action* (other than cases sounding in tort) *brought by or against the United States in any court having jurisdiction of that action,* unless the court finds that *the position of the United States was substantially justified* or that special circumstances make an award unjust.

In 1985, Congress amended the EAJA provision set out above to make it clear that the "position of the United States" was intended to include, "in addition to the position taken by the United States in the civil action, *the action or failure to act by the agency upon which the civil action is based."*[15] As stated by this circuit in *Russell v. National Mediation Board,* the legislative history behind the amendment to § 2412(d)(1)(A) of the EAJA definitively

---

**8.** *See* H.R.Rep. No. 404, 97th Cong., 1st Sess. 14 (1981), *quoted in Baker v. Commissioner,* 83 T.C. 822, 827 (1984); *cf. Sharpe v. United States,* 607 F.Supp. 4 (E.D.Va.1984).

**9.** Pub.L. No. 97–248, § 292(a), 96 Stat. 324, 572–74.

**10.** *Id.,* § 292(e)(1), 96 Stat. at 574.

**11.** H.R.Conf.Rep. No. 760, 97th Cong., 2d Sess. 687, *reprinted in* 1982 U.S.Code Cong. & Ad. News 1190, 1450.

**12.** *See* 28 U.S.C. § 2412(d)(1)(A) (1982) (repealed 1984).

**13.** Act of Aug. 5, 1985, Pub.L. No. 99–80, § 2(c)(2), 99 Stat. 183, 185 (to be codified at 28 U.S.C. § 2412(d)(2)(D)).

**14.** *See, e.g., Iowa Express Distrib., Inc. v. NLRB,* 739 F.2d 1305, 1309 (8th Cir.), *cert. denied,* —

U.S. ——, 105 S.Ct. 595, 83 L.Ed.2d 704 (1984); *Rawlings v. Heckler,* 725 F.2d 1192, 1195 (9th Cir.1984); *Natural Resources Defense Council, Inc. v. EPA,* 703 F.2d 700, 707 (3d Cir.1983). *But see Russell v. National Mediation Bd.,* 764 F.2d 341, 350 (5th Cir.1985), *vacated and remanded,* 775 F.2d 1284 (1985); *Ashburn v. United States,* 740 F.2d 843, 849 (11th Cir.1984); *Boudin v. Thomas,* 732 F.2d 1107, 1115–16 (2d Cir.1984); *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1486 (10th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984); *Spencer v. NLRB,* 712 F.2d 539, 548–57 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

**15.** Act of Aug. 5, 1985, Pub.L. No. 99–80, § 2(c)(2), 99 Stat. 183, 185 (to be codified at 28 U.S.C. § 2412(d)(2)(D)).

shows that the additional statutory language was meant only "to clarify existing law." [16]

■ The two statutes do, it is true, contain differences, and § 7430 by and large places taxpayers at a disadvantage in comparison with civil litigants seeking attorney fees under the EAJA. Under § 7430(c)(2)(A)(i), the taxpayer has the burden of demonstrating that the government's position was unreasonable. Under the EAJA, by contrast, the government has the burden of showing that its position was "substantially justified." [17] Section 7430(b)(2) provides that a taxpayer may not receive litigation costs unless he has exhausted his administrative remedies; the EAJA contains no exhaustion requirement. Finally, § 7430(b)(1) sets a maximum of $25,000 on the litigation expenses that a taxpayer may recover while the EAJA does not limit the total amount of fees recoverable. On the other hand, the EAJA limits the maximum hourly fee a lawyer may recover to $75 per hour "unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee," [18] while § 7430 does not contain such a maximum. These differences sufficiently disfavor taxpayer litigants as compared to other civil litigants without further placing them at a disadvantage by narrowly construing the scope of the phrase "position of the United States in the civil proceeding." Neither the language of the statute nor its legislative history mandates such a restrictive reading.

■ While § 7430 uses the words "civil proceeding" and the EAJA uses the phrase "civil action," the different words do not of themselves indicate a different intent. [19] The phrase "position of the United States" is used in both statutes. The IRS argues that the fact that the phrase, "position of the United States," is immediately followed by the modifying phrase "in the civil proceeding" in § 7430, and is not so immediately modified in the EAJA provision, is determinative, reading the clause to indicate that a narrower coverage was intended under § 7430. [20] We are not so persuaded. Statutes are to be read in their entirety, not word by separate word or clause by isolated clause. A shard is helpful in reconstructing a pot, but one alone does not establish the original shape. In like fashion, a statutory fragment may be informative, but it should not be conclusive of the statute's meaning. [21] Absent some compelling reason to read the analogous phrases in the two statutes differently, they should be interpreted consistently. The bills may have originated in different committees and their legislative history may differ, but the intent of Congress is determined by looking primarily to the statute that was enacted by the entire Congress. Several courts have, therefore, looked to the similar provisions of the EAJA in determining whether the IRS's prelitigation position should be considered. [22] We too find the comparison instructive and, considering the similarity of the language used, find that Congress' retroactive interpretation of the phrase used in the EAJA should be equally applicable to

16. 775 F.2d 1284, 1286 (5th Cir.1985); *see also USLIFE Title Ins. Co. of Dallas v. Harbison,* 784 F.2d 1238, 1241–42 & nn. 3 & 4 (5th Cir.1986).

17. 28 U.S.C. § 2412(d)(1)(A); *see Russell v. National Mediation Board,* 775 F.2d 1284, 1288 (5th Cir.1985).

18. 28 U.S.C. § 2412(d)(2)(A).

19. It appears that, generally, cases before United States district court, and the Court of Claims are referred to as "civil actions." *See, e.g.,* 26 U.S.C. §§ 7401, 7426(a); Fed.R.Civ.P. 2, 3. Cases before the Tax Court are, on the other hand,

denominated "proceedings." *See, e.g.,* 26 U.S.C. §§ 7452–55, 7458–59. The legislative history establishes that § 7430 was to encompass all such actions or proceedings. *See* S. 1673, 97th Cong., 1st Sess. § 2(a) (1981); H.R. 3262, 97th Cong., 1st Sess. § 2(a) (1981).

20. *See Baker v. Commissioner,* 787 F.2d 637, 641, n. 8 (D.C.Cir.1986).

21. *See Finney,* 617 F.Supp. at 1001–02.

22. *See, e.g., id.; Peavy v. United States,* 625 F.Supp. 974 (D.Colo.1986); *cf. Balanced Financial Management,* 769 F.2d at 1450.

§ 7430, even though Congress amended only the EAJA and not § 7430.

Only the First Circuit has decided this issue since the adoption of the EAJA amendments. In *Kaufman v. Egger,* it rejected the government's argument that "the term 'civil proceeding' includes only the litigation-related proceedings *after* a suit is initiated," [23] and held that "prelitigation conduct can be considered as well in setting attorney's fees." [24] The holding of *Kaufman* is broad. It permits a court to inquire into the reasonableness of the government's position at all stages of the administrative process. Powell does not argue here that we should adopt such an expansive interpretation of § 7430. He asserts, instead, that the phrase "position of the United States in the civil proceeding" must include the position adopted at the highest administrative level, the position, that is, that causes the litigation to be commenced in the first place. This interpretation would be similar to that espoused in the 1985 EAJA amendment—"in addition to the position taken by the United States in the civil action, the action or failure to act by the agency *upon which the civil action is based.*" [25] And, even in opinions that have decided that the litigation position controls, the courts have supported this interpretation by looking to the government's posture immediately before court proceedings began.

In *Baker v. Commissioner,* [26] the District of Columbia Circuit recently stated: "We agree that section 7430 and its legislative history are both literally and sensibly read to [mean] ... that the relevant *position* of the United States is the one taken *in the civil proceeding,*" expressly excluding

from the reasonableness consideration the IRS's pre-litigation conduct.[27] Immediately following this statement, however, the court notes that it does not "take issue with the Tax Court's conclusion that the *Commissioner's legal position, at the time Baker filed his petition* with that court, appeared to be within the pale of reason." [28] In the *United States v. Balanced Financial Management,*[29] the Tenth Circuit also inquired about the government position that precipitated the initiation of civil proceedings. Though the court stated that "the position of the United States means the arguments relied upon by the Government *in litigation,*" [30] it also noted that, "[s]ince the position of the Government *in commencing the contempt proceeding* was not unreasonable, the attorneys' fees should not have been awarded." [31] The Tenth Circuit further observed, "That the Government's attorney failed to appear at the contempt hearing does not render the *institution* of the contempt proceedings *or* the Government's *position in that underlying contempt proceeding* unreasonable." [32] And, as the First Circuit itself emphasized in *Kaufman v. Egger,* "the institution of [the taxpayer's] action was a proximate, if not inevitable, consequence" of the government's unreasonable prelitigation stance.[33]

These statements suggest that, under the appropriate facts, if a taxpayer is forced to resort to litigation by an unreasonable IRS administrative position, § 7430 does not require the captious position to be ignored. The taxpayer must be the plaintiff in Tax Court proceedings. If the IRS takes an arbitrary position and forces a taxpayer to file a suit, then, after the pa-

---

**23.** 758 F.2d 1, 4 (1st Cir.1985).

**24.** *Id.* (citations omitted).

**25.** Act of Aug. 5, 1985, Pub.L. No. 99–80, § 2(c)(2), 99 Stat. 183, 185 (to be codified at 28 U.S.C. § 2412(d)(2)(D)) (emphasis supplied).

**26.** 787 F.2d 637, 641 (D.C.Cir.1986) (emphasis in original).

**27.** *Id.,* n. 8.

**28.** *Id.* at 642 (emphasis supplied).

**29.** 769 F.2d 1440 (10th Cir.1985).

**30.** *Id.* at 1450 (emphasis supplied).

**31.** *Id.* at 1451, n. 12 (emphasis supplied).

**32.** *Id.* at 1450–51 (emphasis supplied).

**33.** 758 F.2d at 4.

pers have been filed, becomes sweet reason, the taxpayer should be permitted to recover the cost of suing. This does not mean that the IRS position throughout the administrative proceedings need be examined; rather, the inquiry should focus on the IRS's position at the time the taxpayer's petition was filed. This reading of § 7430 allows tax litigants to recover the costs of a civil proceeding they never should have been required to initiate. So read, § 7430 furthers the Congressional purpose behind awarding fees—to "enable individual taxpayers to vindicate their rights regardless of their economic circumstances" and to "deter abusive actions and overreaching by the Internal Revenue Service." [34]

We express no opinion concerning whether or not the IRS position that caused the taxpayer to file suit was reasonable. We remand for a determination of that question, and further proceedings consistent with this opinion.

THORNBERRY, Circuit Judge, dissenting:

The issue in this case is whether the phrase "position of the United States in the civil proceeding" in 26 U.S.C. § 7430(c)(2)(A)(i) refers to the government's litigation position only, or to its prelitigation position as well. Because I believe that the phrase refers to the government's litigation position only, I respectfully dissent.

The majority properly begins its analysis with an examination of § 7430's text. The majority demonstrates convincingly that as used elsewhere in § 7430, the phrase "civil proceeding" means proceedings before a court only. *See* § 7430(a), (c)(1)(A)(ii), (c)(1)(A)(iv).[1] This textual analysis should have been conclusive. There is, after all,

nothing in the language or legislative history of § 7430 to suggest that Congress used the "civil proceeding" phrase differently in § 7430(c)(2)(A)(i) than it did elsewhere in the statute. But the majority does not stop; not content to parse the text of § 7430, it goes on to consider the statute in light of recent amendments to the Equal Access to Justice Act, an entirely separate statute.

Initially, I find surprising the majority's inference that in amending the EAJA to clarify its terms, Congress meant by implication to amend § 7430 as well. I think it more plausible that when Congress amends one statute but does not amend a second, similar statute, it means the two statutes to be construed differently. But my objection to the majority's reliance on the EAJA is more specific; I believe that the majority misapprehends the significance of the differences between the EAJA and § 7430.

Most obvious is the textual difference between the two statutes. The EAJA refers to the "position of the United States," 28 U.S.C. § 2412(d)(1)(A), while § 7430(c)(2)(A)(i) speaks of the "position of the United States *in the civil proceeding*." (Emphasis added.) The D.C. Circuit has concluded, and I agree, that the phrase "in the civil proceeding" in § 7430(c)(2)(A)(i) indicates "a focus narrower than the EAJA's." *Baker v. Commissioner*, 787 F.2d 637, 641 n. 8 (D.C.Cir.1986). The majority dismisses this textual difference, noting that the "in the civil proceeding" phrase is a mere "shard" from which the shape of the entire "pot"—presumably § 7430—cannot alone be gleaned. This casual dismissal of a significant textual difference is particularly odd in light of the majority's assertion earlier in its opinion that the "crucial issue" in this case is the

---

**34.** H.R.Rep. 97–404, 97th Con., 2d Sess. 11 (1982), quoted in *Kaufman*, 758 F.2d at 4. *See generally* Langstraat, *Collecting Attorney Fees from the Government in Tax Litigation: An Analysis of the Winners and Prospects for the Future,* 17 St. Mary's L.J. 395 (1986).

**1.** The majority might have added that in an analogous context, this Court recently concluded that the phrase " 'action or proceeding' commonly refers to some sort of adversary proceeding in the nature of a traditional lawsuit." *Arriola v. Harville,* 781 F.2d 506, 510 (5th Cir.1986) (referring to attorney fee provision in the Voting Rights Act).

proper interpretation of the "civil proceeding" language.[2]

There are other significant differences between § 7430 and the EAJA. Section 7430, enacted in 1982, removed taxpayer litigation from the scope of the EAJA. *See* Pub.L. No. 97–248, § 292(c), 96 Stat. 324, 574 (1982). Section 7430 places taxpayers at a disadvantage compared to civil litigants proceeding under the EAJA. Under § 7430(c)(2)(A)(i), for example, the taxpayer has the burden of showing that the government's position was unreasonable; under the EAJA, the government has the burden of showing that its position was reasonable. *See Russell v. National Mediation Board,* 775 F.2d 1284, 1288 (5th Cir.1985). Section 7430(b)(2) provides that the taxpayer may not obtain litigation costs unless he has exhausted his administrative remedies; the EAJA contains no such requirement. Section 7430(b)(1) establishes an attorney fee cap of $25,000; the EAJA does not set a limit on total fees.[3]

I infer from these differences, disfavoring taxpayer litigants, that Congress may well have intended to disfavor them in defining the "position" phrase as well. This interpretation of Congress' intent squares with the textual difference between the two statutes. The majority, however, views these differences in quite a different light. After examining the statutes and noting that Congress has placed taxpayers at a disadvantage, the majority comes to a startling conclusion: "These differences sufficiently disfavor taxpayer litigants as compared to other civil litigants without further placing them at a disadvantage by narrowly construing the scope of the phrase 'position of the United States in the civil proceeding.'" Thus the majority, evidently believing that Congress has unfairly skewed § 7430 against the taxpayer, attempts to set matters right by giving the "position" phrase a broad reading. Although I respect the majority's concern for fairness, I cannot agree with its freewheeling approach to statutory construction.

Near the end of its opinion the majority concludes that the "position" phrase in § 7430(c)(2)(A)(i) does not include the IRS's position throughout the administrative proceedings; "rather, the inquiry should focus on the IRS's position at the time the taxpayer's petition was filed." This limitation, like the majority's rule itself, has warrant in neither the language nor the legislative history of § 7430.[4] I find it even more

---

**2.** In one respect the EAJA directly conflicts with the majority's interpretation of § 7430. The recent amendments to the EAJA provide that the "position of the United States" includes "in addition to the position taken by the United States *in the civil action,* the action or failure to act by the agency upon which the civil action is based." Pub.L. No. 99–80, § 2(c)(2), 99 Stat. 183, 185 (to be codified at 28 U.S.C. § 2412(d)(2)(D)) (emphasis added). In this context, Congress plainly used the phrase "in the civil action" to refer to proceedings before a court. If the majority is correct in its suggestion that "civil action" in the EAJA has roughly the same meaning as "civil proceeding" in § 7430, then it follows that the "civil proceeding" phrase also encompasses court proceedings only.

**3.** The EAJA does limit the maximum hourly fee a lawyer may recover to $75 per hour "unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Section 7430 does not contain an hourly fee cap for attorney fees.

**4.** In support of its limitation, the majority cites *Baker v. Commissioner,* 787 F.2d 637, 641 (D.C.

Cir.1986), and *United States v. Balanced Financial Management, Inc.,* 769 F.2d 1440, 1450–51 (10th Cir.1985). The single sentence that the majority quotes from *Baker*—"Nor do we take issue with the Tax Court's conclusion that the Commissioner's legal position, at the time Baker filed his petition with that court, appeared to be within the pale of reason"—is far too conclusory and ambiguous to lend the majority's position much support. The majority's citation to *Balanced Financial Management* is even less apposite. There, the government *commenced* a civil contempt proceeding against the taxpayers. Thus, the government was in the position of plaintiff and the taxpayers were in the position of defendants. When the government is the plaintiff, its litigation position plainly includes the position it takes in instituting the litigation. *See id.* at 1450–51 & n. 12. Here, by contrast, the government was the defendant before the Tax Court. I do not see how the government as defendant can have a litigation position before it has filed its answer or otherwise made its position formally known to the court.

telling, however, that the limitation finds no analog in the EAJA's position phrase, which earlier in its opinion the majority treats as a virtual twin of § 7430(c)(2)(A)(i). Under the EAJA as amended, the "position of the United States" includes "the action or failure to act by the agency upon which the civil action is based." Pub.L. No. 99–80, § 2(c)(2), 99 Stat. 183, 185 (to be codified at 28 U.S.C. § 2412(d)(2)(D)). This provision does not purport to limit the inquiry to the agency's position at the time the litigant files suit. In construing § 7430, therefore, the majority treats Congress' amendment of the EAJA as conclusive in one context and ignores it entirely in another.

If I were drafting a statute or formulating a common law rule to govern the award of litigation costs in tax cases, I might well endorse the majority's approach. But that is not our role; we are construing a statute duly enacted by Congress. In so doing we must adhere to the congressional intent as revealed in the words of the statute. My reading of § 7430 persuades me that Congress intended the phrase "position of the United States in the civil proceeding" to refer to the government's litigation position only. Because I believe that the majority substitutes its own notion of fairness for the clear command of the statutory text, I must, with respect, dissent.