150 T.C. No. 5

UNITED STATES TAX COURT

FRIENDS OF THE BENEDICTINES IN THE HOLY LAND, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22012-13X.                              Filed February 21, 2018.

Following IRS inaction on P's application for recognition of tax-exempt status, P filed a petition for a judgment declaring it to be an organization exempt from Federal income tax under I.R.C. sec. 501(a). The IRS subsequently issued a favorable determination letter and, before even filing an answer, R conceded. P moved for an award of reasonable administrative and litigation costs under I.R.C. sec. 7430.

1. Held: The submission to the IRS of an application for recognition of exemption from tax under I.R.C. sec. 501(c)(3) begins an administrative proceeding for the purposes of I.R.C. sec. 7430.

2. Held, further, P is not entitled to administrative costs.

3. Held, further, P is not entitled to litigation costs because R's litigation position was substantially justified.

Christopher S. Rizek and Matthew C. Hicks, for petitioner.

Elizabeth S. Henn and Casey A. Lothamer, for respondent.

OPINION

WELLS, Judge:  Before us is petitioner's motion for reasonable litigation or administrative costs.  All section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  We round all monetary amounts to the nearest dollar.

## Background

On July 2, 2012, petitioner, Friends of the Benedictines in the Holy Land, Inc. (Friends of the Benedictines), submitted to the Internal Revenue Service (IRS) a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code.  For more than one year, the only response from the IRS to petitioner was a perfunctory form letter acknowledging receipt of the application.  On or around September 18, 2013, petitioner's counsel contacted the IRS to ask when it would issue a ruling or determination on the application.  The IRS representative informed counsel that the application for exemption was still

being processed and that the IRS could not provide a date certain by which it would issue a ruling or determination.

On Friday, September 20, 2013, Friends of the Benedictines petitioned this Court for a judgment declaring it to be an organization exempt from Federal income tax under section 501(a). On Sunday, September 22, 2013, the Tax Exempt & Government Entities Division of the IRS issued a determination letter recognizing that Friends of the Benedictines is an organization described in sections 501(c)(3) and 170(b)(1)(A)(vi), effective March 14, 2012. On October 1, 2013, counsel for respondent spoke with petitioner's counsel and discussed the recently issued determination letter. Respondent's counsel intended to file a motion to dismiss, but petitioner's counsel instead proposed that they resolve the case with a joint decision and stipulation. Respondent agreed, and over the next month and a half worked with three separate attorneys for petitioner to file the stipulation and decision documents. On December 31, 2013, this Court entered a stipulated decision stating that Friends of the Benedictines is exempt from Federal income tax under section 501(a) as an organization described in section 501(c)(3).

On January 30, 2014, petitioner filed a motion for an award of reasonable litigation or administrative costs pursuant to section 7430 and Rules 230 and 231. Petitioner attached two invoices and an affidavit stating that the legal fees and

expenses shown therein were "charged" and "incurred" by the law firm "for services provided to Friends of the Benedictines in connection with this matter." The first invoice, No. 7862-1013, showed Dormition Abbey as the client and a total due of $11,272. Dormition Abbey was the law firm's previous client, which at first engaged the attorneys to represent petitioner in this matter. The second invoice, No. 7862-0114, showed Friends of the Benedictines as the client and a subtotal of $19,851, prior balance due of $11,272, and a total due of $31,123. In its motion petitioner seemed to claim only litigation costs. The invoices showed work performed between September 9, 2013, and January 29, 2014. Although the description of the work performed was completely redacted, the work product generated over this five-month period included the petition, the stipulation, and the motion for costs. This work product totaled 27 pages, including title pages and exhibits.

Respondent filed a response to the motion on February 24, 2014, and contended, in part, that petitioner's thoroughly redacted billing statements failed to meet its burden to prove the costs incurred. In response to this Court's order, petitioner filed on April 7, 2014, its first supplement to motion for reasonable

litigation or administrative costs (supplement).[1]  Petitioner clarified that it is in fact seeking both administrative and litigation costs:  $8,478 in administrative costs in connection with its Form 1023 and $60,512 in litigation costs related to the stipulation documents, motion for costs, and ancillary protective order motion. Petitioner's new filings, which required reviewing respondent's 18-page response, totaled 28 pages.

The first invoice petitioner attached to the supplement is once again #7862-1013.  The client name shown is still Dormition Abbey; the date range of the work performed is September 9 to 20, 2013; and the billing rates for the three attorneys whose work is listed range from $490 to $670 per hour.  Despite the invoice's date range being more than one year after the Form 1023 was submitted, petitioner contends its request for administrative costs includes work performed in connection with its Form 1023.[2]  The work described in the invoice is that of

---

[1]On this date, petitioner also filed a motion for a protective order pursuant to Rule 103, requesting that the unredacted billing records be placed under seal.  On April 8, 2014, the Court temporarily placed the records under seal, but on January 4, 2016, petitioner withdrew its motion and consented to the removal of the temporary protective order.

[2]Petitioner's counsel stated that the firm did not charge petitioner for the time spent trying to obtain from the IRS a schedule for the determination of tax-exempt status.  Accordingly, petitioner is not requesting an award of costs for those services.

researching, drafting, and coordinating the petition. The entries include words such as "litigation", "petition", and "court proceeding", and the Code section number for declaratory judgments. The total due shown in the invoice matches the $8,478 that petitioner requests in administrative costs.

Petitioner attached three additional invoices to its supplement. The first invoice is labeled, once again, #7862-1013. The client's name is Dormition Abbey; the invoice includes entries for only September 27, 2013; and the total due is $2,794. This invoice includes the petition filing fee. The invoice number on the second invoice, #7862-0114, matches the one on the second invoice submitted with the original motion. This invoice shows petitioner as the client; the same three attorneys from the previous invoices but with increased billing rates of $500, $655, and $685 per hour; and four additional individuals with billing rates ranging from $215 to $475. Including fees, the subtotal is $19,851 for work performed between October 1, 2013, and January 29, 2014. The third invoice is also #7862-0114; identifies petitioner as the client; lists work performed by the three attorneys and four additional individuals; and spans January 14 to April 7, 2014. The subtotal is $37,866.

The final invoice's "Total Due" is $68,990, which combines the administrative and litigation costs requested. Neither party requested a hearing,

and we conclude one is not necessary.  We will decide the motion on the basis of the parties' filings and exhibits.  See Rule 232(a)(2).

Discussion

In any administrative or court proceeding that is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty, the prevailing party may be awarded reasonable administrative and litigation costs incurred in connection with the proceeding.[3]

---

[3]Sec. 7430 awards can be made only "in connection with the determination, collection, or refund of any tax, interest, or penalty".  This phrase should be construed to include declaratory judgment proceedings.  Congress found it necessary in the original version of sec. 7430 to clarify that "[n]o award for reasonable litigation costs may be made * * * with respect to any declaratory judgment proceeding."  Sec. 7430(b)(3)(A) (1988).  In 1996, however, Congress removed that restriction and in so doing evinced a clear intention to allow the awarding of costs in declaratory judgment proceedings.  "Award of litigation costs permitted in declaratory judgment proceedings."  Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. No. 104-168, sec. 704, 110 Stat. at 1464 (1996).  Several committee prints and reports discuss the provision with the understanding that awards for costs will be allowed in declaratory judgment proceedings, such as by stating that (1) "[t]he House bill eliminates the present-law restrictions on awarding attorney's fees in all declaratory judgment proceedings", H.R. Rept. No. 104-350, at 1387 (1995); (2) "[i]t is appropriate to treat declaratory judgment proceedings [as] similar to other tax proceedings, with respect to eligibility for attorney's fees",  H.R. Rept. No. 104-280 (Vol. II), at 276 (1995); H.R. Rept. No. 104-506, at 38 (1996), 1996-3 C.B. 49, 86; (3) "[t]he proposal would eliminate the present-law restrictions on awarding attorney's fees in all declaratory judgment proceedings", Staff of J. Comm. on Taxation, JCX-36-95 (J. Comm. Print 1995); Staff of J. Comm. on Taxation, JCX-44-95 (J. Comm. Print 1995); Staff of J. Comm. on Taxation, JCX-7-96 (J. Comm. Print 1996); and (4) "[a]ward of

(continued...)

Sec. 7430(a). To recover costs, the taxpayer must establish that (1) it is the prevailing party, (2) it did not unreasonably protract the proceedings, (3) the amount of the costs requested is reasonable, and (4) it exhausted the administrative remedies available. See sec. 7430(b) and (c). These requirements are conjunctive, and the failure to satisfy any one of them will preclude an award of costs. See Minahan v. Commissioner, 88 T.C. 492, 497 (1987); Marten v. Commissioner, T.C. Memo. 2000-186. Respondent does not dispute that petitioner has satisfied the second and fourth requirements.

As the moving party, petitioner has the burden of proving that it satisfies each requirement of section 7430. See Rule 232(e); see also Swanson v. Commissioner, 106 T.C. 76, 85 (1996). This Court has taken a bifurcated approach to deciding when costs may be awarded, meaning taxpayers must separately establish that they meet the requirements for the administrative proceeding and the court proceeding. See Maggie Mgmt. Co. v. Commissioner,

---

[3](...continued)
litigation costs permitted in declaratory judgment proceedings", Staff of J. Comm. on Taxation, JCS-22-95 (J. Comm. Print 1995). Congress' clear objective was to ensure that a sec. 7430 award could be made in declaratory judgment proceedings, and we interpret the statute in a manner that is consistent with that objective. Accordingly, we have the statutory authority to award costs in the instant proceeding.

108 T.C. 430, 442 (1997); Huffman v. Commissioner, T.C. Memo. 1991-144, aff'd in part, rev'd in part, 978 F.2d 1139 (9th Cir. 1992).

## I.  Administrative Costs

The administrative costs that can be awarded to a prevailing party are those described in section 7430(c)(2) and incurred in connection with an IRS administrative proceeding.  Sec. 7430(a)(1).  It is the taxpayer's burden to prove that such costs were incurred and that they are reasonable.  Sec. 7430(c)(2); Rule 232(e); Cooley v. Commissioner, T.C. Memo. 2012-164.

### A. Administrative Proceeding

Respondent's first contention is that petitioner's costs were not incurred in connection with an administrative proceeding.  Section 7430(c)(5) defines an "administrative proceeding" quite broadly as "any procedure or other action before the * * * [IRS]."  The regulation interpreting the statute, however, carves out four exceptions.  Sec. 301.7430-3(a), Proced. & Admin. Regs.  One of those exceptions is requests for private letter rulings (PLR) "or similar determinations".  Id. subpara. (2).  Respondent contends that recognition of tax-exempt status is a determination similar to a PLR.  Both types of proceeding were described in the

same revenue procedure in effect at the filing of the motion,[4] and, presumably, respondent relies on the fact that both requests involve a taxpayer's taking the initiative to secure a certain treatment from the IRS. Consequently, respondent contends petitioner is not entitled to administrative costs under section 7430 because its application for tax-exempt status was not an "administrative proceeding".

We are not persuaded that applications for tax-exempt status are "similar determinations" to PLRs so as to be excepted from the broad definition of "administrative proceeding" in section 7430(c)(5). The fundamental difference lies in that PLRs are discretionary, whereas denials of tax-exempt status may be challenged in court. See secs. 7428, 7422. Section 508(a)(1) requires most tax-exempt organizations to give notice so that they will be treated as an organization described in section 501(c)(3). When the requesting organizations are not required to provide such notice, see sec. 508(c), but submit a Form 1023 nonetheless, the IRS must provide a determination within 270 days or risk facing

---

[4]Rev. Proc. 2014-4, 2014-1 I.R.B. 125 (superseded by Rev. Proc. 2015-4, 2015-1 I.R.B. 144; Rev. Proc. 2016-4, 2016-1 I.R.B. 142; and Rev. Proc. 2017-5, 2017-1 I.R.B. 230).

taxpayers in court.[5]  Sec. 7428(a), (b)(2).  In contrast, the IRS may refuse to respond to requests for PLRs, and there is no review of such a decision.  See sec. 601.201(d)(2), Statement of Procedural Rules; Rev. Proc. 2014-4, sec. 6, 2014-1 I.R.B. 125, 132.  Accordingly, an application for tax-exempt status is an administrative proceeding and may therefore give rise to awards of administrative costs under section 7430.

B. Prevailing Party and Reasonable Administrative Costs

Respondent additionally contends that petitioner is not entitled to costs because it was not the prevailing party in the administrative proceeding and did not incur "reasonable administrative costs", defined in section 7430(c)(2) as only those costs incurred on or after the earliest of:

> (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals; (ii) the date of the notice of deficiency; or (iii) the date on which the 1st letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent.

---

[5]As stated above, previous versions of sec. 7430 explicitly precluded the awarding of litigation costs in declaratory judgment proceedings.  Sec. 7430(b)(3)(A) (1988).Even then, an exception to the exception permitted awarding costs in sec. 501(c)(3) determination revocation proceedings.  Sec. 7430(b)(3)(B) (1988).

Petitioner contends that it is the prevailing party because it meets the net worth requirement and prevailed with respect to the most significant issue, i.e., whether it qualifies as a tax-exempt organization. See sec. 7430(c)(4)(A). However, section 7430(c)(4)(B)(i) provides that a party shall not be treated as the prevailing party if the United States establishes that its position in the proceeding was substantially justified. We held in Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73 (2004), aff'd, 404 F.3d 1291 (11th Cir. 2005), that identifying the Government's position is a precondition for determining whether the taxpayer is a prevailing party.[6] See also Purciello v. Commissioner, T.C. Memo. 2014-50; Kwestel v. Commissioner, T.C. Memo. 2007-135. When the Government fails to take a position at all, therefore, a taxpayer cannot be the prevailing party. Petitioner contends that the Fla. Country Clubs, Inc. rule does not apply when the

_____

[6]Previous versions of sec. 7430 required parties to "establish[] that the position of the United States in the proceeding was not substantially justified" before they could qualify as a "prevailing party". Sec. 7430(c)(4)(A)(i) (1988). The statute was amended in 1996 to shift the burden to the United States to show that its position was substantially justified. See TBOR 2 sec. 701(b), 110 Stat. at 1463. Nonetheless, in Fla. Country Clubs, Inc., because the statute defines the position of the United States taken in an administrative proceeding as the position taken on the earlier of "(i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency", sec. 7430(c)(7)(B), we held that a taxpayer may not qualify as the prevailing party when neither of these notices has been issued, Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73 (2004), aff'd, 404 F.3d 1291 (11th Cir. 2005).

Government's failure to respond is precisely the position we must review for substantial justification, and that instead this Court should apply a similar analysis to that in Reynoso v. United States, No. 10-00098 (SC), 2011 WL 3473366 (N.D. Cal. Aug. 9, 2011). In Reynoso, the Government failed to issue refunds of tax overpayments and seized funds despite the taxpayer's repeated refund requests. Id. at *1. When he filed suit and the Government conceded, the taxpayer moved to recover costs. Id. at *2. The Government contended that it never took a position in the administrative proceeding and cited Fla. Country Clubs, Inc. as support against the awarding of costs. Reynoso, 2011 WL 3473366, at *4-*5. The court decided in favor of the taxpayer, finding that the failure to respond to the taxpayer's repeated refund requests was tantamount to a denial of those requests. Id. at *5-*6.

For similar reasons, petitioner contends that it incurred "administrative costs" under section 7430 even though it never received a notice or letter. See sec. 7430(c)(2). Petitioner urges us to find that administrative costs are not limited to those incurred after the issuance or receipt of a notice or letter. To do so, however, we would have to find an unwritten exception to the statute and hold that the notice or letter requirement is inapposite when the claim for administrative

costs rests on the fact that the IRS has failed to act. See Reynoso, 2011 WL 3473366.

We need not reach a decision regarding either of petitioner's contentions, however, because petitioner has provided evidence only of litigation costs. The invoice matching the amount requested in administrative costs shows a first entry dated well after the filing of the Form 1023. Petitioner's counsel explicitly stated that petitioner was not charged for the time spent trying to obtain a schedule for the determination of tax-exempt status. The work described in the invoice relates to "litigation", the "petition", the "court proceeding", and declaratory judgments. Under section 301.7430-4(c)(3)(i), Proced. & Admin. Regs., costs "incurred in connection with the preparation and filing of a petition with the United States Tax Court" are litigation costs, not administrative costs.[7] The work described in the relevant invoice was performed in connection with the preparation and filing of the petition. Thus, petitioner has presented evidence only of litigation costs, not administrative costs.

For the reasons described above, petitioner has failed to meet its burden of proving it paid or incurred reasonable administrative costs and is therefore not entitled to an award of administrative costs under section 7430(a)(1).

---

[7]Petitioner has not challenged the validity of the regulation.

## II.    Litigation Costs

Respondent contends petitioner is not entitled to litigation costs because the Government's position in the judicial proceeding was substantially justified.  As stated above, this Court uses a bifurcated approach to section 7430 awards.  Accordingly, we evaluate respondent's position in the instant judicial proceeding separately from respondent's position in the administrative proceeding.  See Huffman v. Commissioner, T.C. Memo. 1991-144.

The Government's litigation position is defined broadly in section 7430(c)(7)(A) as "the position taken by the United States in a judicial proceeding".  Unlike with administrative proceedings, section 7430 does not specify when the United States takes a "position" in a judicial proceeding.  Sec. 7430(c)(7).  We have held that the Government's position in a judicial proceeding is generally established at the filing of its answer.  Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 442.  However, the Government's position may be established earlier if the facts so require.  See, e.g., Elder v. Commissioner, T.C. Memo. 2007-281 (finding that counsel established the Government's position in correspondence with the taxpayer); Estate of White v. Commissioner, T.C. Memo. 2007-54 (finding that the Government established its position in its second motion to extend the time in which to file an answer).  We also may review the

Government's position against the backdrop of the administrative actions that have gone before. See, e.g., Trzeciak v. Commissioner, T.C. Memo. 2012-83, 2012 WL 967667, at *14 (analyzing whether the Government's position in the judicial proceeding was substantially justified given the information exchanged in the administrative proceeding); Dodson v. United States, No. 3:12-CV-1164-J-34-JRK, 2013 WL 7137570, at *7 (M.D. Fla. Dec. 9, 2013) (stating that the Government's "contention that its inaction cannot be used against it for purposes of determining whether it was substantially justified is simply unavailing").

In the instant case, days after the petition was filed and before filing an answer, respondent's counsel informed petitioner's counsel that respondent would concede the case. Respondent has shown that his position in the litigation was substantially justified, and therefore petitioner cannot be treated as the prevailing party. See Huffman v. Commissioner, 978 F.2d at 1148 (noting that the Government's conduct is reasonable if the Government concedes in its initial response to the litigation); Donlon I Dev. Corp. v. United States, 830 F. Supp. 1315 (C.D. Cal. 1993).

Petitioner contends respondent's concession is insufficient to establish that his position was substantially justified because it followed Government inaction or arbitrary positions taken during the administrative phase. See Reynoso, 2011 WL

3473366; <u>Grisanti v. United States</u>, No. 3:05CV12-D-A, 2006 WL 2908642 (N.D. Miss. Oct. 10, 2006). In <u>Grisanti</u>, 2006 WL 2908642, at *3, the taxpayers filed suit after the IRS failed to either issue a refund or deny the refund request. Three weeks after the suit was filed, the Government issued the refund. <u>Id.</u> The court then denied the taxpayers' claim for administrative costs but awarded litigation costs. <u>Id.</u> at *3-*4. In assessing whether the Government was substantially justified, the court considered how the Government's position, or lack thereof, in essence forced the taxpayers to file a court claim in order to secure their refund. <u>Id.</u> at *3. The court explained that the Government could not protect itself by failing to issue an official administrative ruling and then conceding in the first three weeks of the court proceeding. <u>Id</u>; <u>see also</u> <u>Powell v. Commissioner</u>, 791 F.2d 385, 391-392 (5th Cir. 1986) ("If the IRS takes an arbitrary position and forces a taxpayer to file a suit, then, after the papers have been filed, becomes sweet reason, the taxpayer should be permitted to recover the cost of suing." (interpreting the previous, nonbifurcated version of section 7430)).

The District Court's analysis in <u>Grisanti</u>, however, is inconsistent with the bifurcated approach adopted and repeatedly applied by this Court, which evaluates the Government's litigating position on the basis of its actions after the filing of the petition. <u>See</u> <u>St. Claire v. Commissioner</u>, T.C. Memo. 2016-192; <u>Elder v.</u>

Commissioner, T.C. Memo. 2007-281; Estate of White v. Commissioner, T.C. Memo. 2007-54. Evaluated on that basis, the Government's litigation position here, prompt concession, cannot be criticized and was "substantially justified".

We do sympathize with petitioner. Section 7428 was enacted because Congress recognized that "[m]ost organizations hoping to qualify for exempt status find it imperative to obtain a favorable ruling letter" from the IRS; doing so "assure[s] potential donors in advance that contributions to the organization will qualify as charitable deductions". H.R. Rept. No. 94-658, at 283 (1975), 1976-3 C.B. (Vol. 2) 695, 975; see also Bob Jones Univ. v. Simon, 416 U.S. 725, 749-750 (1974). Congress intended section 7428 "to facilitate relatively prompt judicial review", H.R. Rept. No. 94-658, supra at 286, 1976-3 C.B. (Vol. 2) at 978, and the statute expressly provides that an organization applying for tax exempt status may file suit if the IRS has not ruled after 270 days, sec. 7428(b)(2). Petitioner waited well over 14 months after it applied, and even then the IRS declined to give petitioner any assurance that a ruling would be forthcoming. We cannot criticize petitioner for then filing a petition; and the IRS' almost immediate issuance of a determination and concession indicates that petitioner should not have been put to the trouble and expense of doing so.

Congress amended section 7430 to allow for the awarding of costs in declaratory judgment proceedings, see supra note 3, but only where the Government's position is not "substantially justified". While we recognize that section 7430 leaves a gap in coverage in circumstances such as this one, it is not our place to provide a remedy. See, e.g., Pac. Fisheries, Inc. v. United States, 484 F.3d 1103, 1111 (9th Cir. 2007) ("Although the IRS's issuance of the administrative summonses forced the taxpayers into litigation, we see no fees remedy for them in the judicial proceeding. We conclude that their case falls into a gap in the statute, but it is not our role to bridge that gap."). In the instant judicial proceeding, because respondent's counsel promptly conceded the case, the Government's position was substantially justified, and petitioner is not a prevailing party entitled to recover litigation costs.[8]

---

[8]Respondent additionally contends that even if we were to find that his position was not substantially justified, petitioner has failed to prove that it incurred reasonable litigation costs. See sec. 7430(a)(2); Cooley v. Commissioner, T.C. Memo. 2012-164; Vasquez v. Commissioner, T.C. Memo. 2007-6, 2007 WL 63742, at *20, aff'd, 284 F. App'x 381 (9th Cir. 2008). Two of the invoices submitted do not list petitioner as the client to be billed; the multiple invoices with repeating invoice numbers and varying contents suggest a level of informality inconsistent with a legal obligation for payment; and the "Total Due" in the final invoice shows that at the time the motion was filed, petitioner had not paid any of the fees and costs requested. Furthermore, petitioner's attorneys' billing rates are higher than the hourly rate cap in sec. 7430(c)(1)(B)(iii), see also O'Bryon v. Commissioner, T.C. Memo. 2000-379, although the statutory cap may be waived

(continued...)

III.    Conclusion

Petitioner failed to provide evidence of any reasonable administrative costs incurred in the administrative proceeding and cannot be treated as the prevailing party in the judicial proceeding.  The Government's concession within days of the filing of the petition was a substantially justified position in the judicial proceeding, irrespective of its previous actions.  Accordingly, petitioner is entitled to neither administrative nor litigation costs.

An appropriate order and

decision will be entered.

---

[8](...continued)
if "the court determines that * * * a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate", sec. 7430(c)(1)(B)(iii); United States v. Guess, 390 F. Supp. 2d 979, 990 (2005). Because we find that petitioner is not entitled to litigation costs, we need not decide whether petitioner paid or incurred litigation costs or whether the claimed fees are reasonable.