856 F.2d 775
 62 A.F.T.R.2d 88-5452, 57 USLW 2176, 88-2
USTC P 9497
 William L. COMER Family Equity Pure Trust; Myra L. Comer,
Trustee; William L. Comer & Myra, T.R.Y.E.-A. Trust;
William L. Comer, Trustee, American Way Trust; Myra L.
Comer, Trustee, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 86-1738.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Sept. 17, 1987.
Decided Sept. 9, 1988.
 
 William L. Comer, Myra L. Comer, Clare, Mich., pro se.
 Jean Owens, Acting Counsel, IRS, William F. Nelson, Chief Counsel, I.R.S., Michael L. Paup (Lead Counsel), Roger M. Olsen, Tax Div., Dept. of Justice, Washington, D.C., Robert S. Pomerance, for respondent-appellee.
 Before ENGEL, Chief Judge*, RYAN, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 After successfully resisting the government's efforts to assess deficiency penalties against them, petitioners sought reasonable litigation costs pursuant to 26 U.S.C. Sec. 7430. The Tax Court denied the petitioners' motions as untimely or, alternatively, for lack of evidence that the respondent acted unreasonably after the petitions were filed. Petitioners appeal. On review we find that the motions were timely. We also conclude that the government's pre-litigation and in-litigation conduct must be evaluated to determine whether the position of the United States was unreasonable for the purposes of an award pursuant to Sec. 7430. Therefore, we reverse the Tax Court's order dismissing the petitioners' motions for litigation costs, and remand for consideration of whether the government's pre-litigation position was unreasonable.
 
 I.
 
 2
 Petitioners Myra and William Comer are husband and wife. Mr. Comer established three trusts of which he and Mrs. Comer are trustees. In January 1983, Mr. Comer was notified that the trusts were to be audited for the 1981 tax year. The affidavit supported allegations detailing the subsequent conduct of the IRS agents are troublesome, to say the least. One example of the contrived theories concocted by the respondent's agents in their attempt to win deficiency assessments against the petitioners is the Commissioner's claim, in the deficiency assessment against the Comers, that the trusts are shams and their income taxable to the Comers. In contrast, in the deficiency assessments against the trusts, the Commissioner claimed the trusts are valid entities taxable in their own right.
 
 
 3
 The petitioners received four notices of deficiency totaling about $18,000 and assessing interests and costs. One notice was for the Comers' joint return and the other three notices were directed to the three trusts: the Comer Family Equity Pure Trust; the American Way Trust; and the T.R.Y.E.-A. Trust. Upon receiving these notices, Mr. Comer requested a meeting with an appeals officer. He received no response. Thereafter, in June of 1985, he filed four petitions in the Tax Court.
 
 
 4
 The petitions were docketed for trial on May 12, 1986. A pretrial stipulation settlement conference was held for two and one-half days in early April. This conference produced the parties' stipulated agreement adopted by the Tax Court in its decisions entered by May 27, 1986. The agreement declared that the petitioners were not liable for any deficiencies, penalties, or interest with respect to the 1981 tax year. Although the petitioners' original petitions sought litigation costs, the stipulated agreement was silent on this matter and does not indicate whether the silence was intended or due to oversight.
 
 
 5
 On May 30, 1986, petitioners filed motions for litigation costs pursuant to 26 U.S.C. Sec. 7430. Reasonable litigation costs are awardable in a civil tax proceeding brought against the United States in the Tax Court if the taxpayer has "substantially prevailed with respect to the amount in controversy," Sec. 7430(c)(2)(A)(ii)(I) and "establishes that the position of the United States in the civil proceeding was unreasonable." Sec. 7430(c)(2)(A)(i) (1982). The Tax Court denied the motions on June 19, 1986, on two grounds. First, the motions were "untimely" because they had not been filed prior to the Tax Court's decisions, and second, there was no evidence of unreasonable behavior by the government after the filing of the petitions, that is, when the controversy became a lawsuit. Subsequently, petitioners filed a motion to vacate the Tax Court's May decisions in the four petitions solely to enable the petitioners to file timely motions for costs. The motions to vacate were denied on July 2, 1986. Because the petitions raised similar issues they were consolidated.
 
 II.
 
 6
 First, we address the Tax Court's determination that petitioners' motions for reasonable litigation costs, filed three days after the Tax Court's decision incorporating the stipulated agreements was filed, were untimely. Although Sec. 7430 establishes the availability of costs, it does not detail the procedural path to be taken to obtain them. The only part of Sec. 7430 remotely relevant to this inquiry is subsection (e) which states:
 
 
 7
 (e) Right of appeal. An order granting or denying an award for reasonable litigation costs under subsection (a), in whole or in part, shall be incorporated as a part of the decision or judgment in the case and shall be subject to appeal in the same manner as the decision or judgment.
 
 
 8
 26 U.S.C. Sec. 7430(e).
 
 
 9
 But the plain meaning of Sec. 7430(e) does not mandate that a motion for costs be filed before the entry of a decision. The focus of subsection (e) is the appealability of an order granting or denying costs, not the time for filing a motion for costs. The subsection simply provides that if an order on costs exists when the decision is reached, it "shall be incorporated as a part of the decision" and is thus appealable. It does not mandate when the motion for such an order should be made.
 
 
 10
 Since the plain meaning of the statute's language sheds no light as to its meaning, the Congressional intent must be gleaned from other sources. The Commissioner cites the House Report explaining that Congress
 
 
 11
 expect[ed] the courts to develop procedures or take action, by court rules or otherwise, concerning the time and manner in which taxpayers' claims for awards of litigation costs are to be made.
 
 
 12
 H.R.Rep. No. 97-404, 97th Cong., 1st Sess. 12 (1982). As a result, the Tax Court enacted Tax Court Rules of Practice and Procedure 231.
 
 
 13
 Rule 231(a)(2) speaks to cases in which all issues other than litigation costs have been settled. Its language describes the situation in this case:
 
 Rule 231. CLAIMS FOR LITIGATION COSTS
 
 14
 (a) Time and Manner of Claim:
 
 
 15
 ....
 
 
 16
 (2) Unagreed Cases: Where a party has substantially prevailed and wishes to claim reasonable litigation costs, and there is no agreement as to that party's entitlement to such costs, a claim shall be made by motion filed--
 
 
 17
 (i) Within 30 days after the service of a written opinion determining the issues in the case;
 
 
 18
 (ii) Within 30 days after the service of the pages of the transcript that contain findings of fact or opinion stated orally pursuant to Rule 152 (or a written summary thereof); or
 
 
 19
 (iii) After the parties have settled all issues in the case other than litigation costs. See paragraphs (b)(2) and (c) of this Rule regarding the filing of a stipulation of settlement with the motion in such cases.
 
 
 20
 Tax Court Rule of Practice and Procedure 231(a)(2). Rule 231(a)(2) provides three alternative times for filing a motion for litigation costs. If subsection (a)(2)(i) of the rule applies to this case, clearly the petitioners' motions were timely because they were filed within thirty days of the Tax Court's written order. But respondent argues that (i) applies to non-settled cases in which the Tax Court writes a decisional opinion and is, therefore, inapplicable to this case which the parties settled. If so, then it is clear that (iii) of the subsection applies, which provides that a motion for costs "shall be made by motion filed ... (iii) [a]fter the parties have settled all issues in the case other than litigation costs." Respondent argues, however, that under (iii), the motion must be "made ... [a]fter the parties have settled....", but before the Tax Court's final decision in the case is rendered, so that the decision on the motion for costs may be "incorporated in the decision itself."
 
 
 21
 The short answer to that contention is that (iii) states only that the motion must be made after the settlement is reached. It imposes no limitation relative to the time the settlement agreement is memoralized in a Tax Court order.
 
 
 22
 The respondent cites Sanders v. Commissioner, 813 F.2d 859 (7th Cir.1987), in support of his view. We do not believe, however, that this case is controlled by Sanders. There, the taxpayer's deficiency action was dismissed pursuant to the taxpayer's own motion to dismiss for lack of jurisdiction, due to the lack of a valid deficiency notice. Id. at 861. Thereafter, the taxpayer filed a motion for costs under Sec. 7430. The Seventh Circuit held that once the deficiency action was dismissed, the Tax Court had no jurisdiction to hear the petition for costs. Id. at 862 (citing Fuller v. Commissioner, 51 T.C.M. 336 (1986)). However, the Tax Court subsequently overruled the Fuller decision in Weiss v. Commissioner, 88 T.C. 1036, 1039 (1987). Thereafter, the Weiss decision, allowing a motion for costs pursuant to Sec. 7430 to be filed within thirty days of the dismissal of the case due to lack of jurisdiction, was upheld by the Ninth Circuit in Sponza v. Commissioner, 844 F.2d 689, 690 (9th Cir.1988).
 
 
 23
 The Seventh Circuit was convinced that "in enacting Sec. 7430, Congress did not provide a time limit that would allow litigants to file for fees after a final disposition of a tax case." Sanders, 813 F.2d at 862. The court arrived at this conclusion after observing that the "Equal Access to Justice Act, on which Congress expressly relied on in enacting Sec. 7430," explicitly provides that a party may file for fees within thirty days after the final disposition of the case. Id. However, in his concurring opinion, Judge Reynolds noted that:
 
 
 24
 The suggestion in this case that the taxpayer's motion for fees and costs could have been saved had he submitted the request simultaneously with his motion to dismiss for lack of jurisdiction might make sense as a matter of convenience, but it is certainly not required by either the statute or as a matter of logic.
 
 
 25
 Id. at 863 (Reynolds, J., concurring).
 
 
 26
 We are unwilling to infer from Congress' silence the intent to preclude motions for costs being filed after a final decision. Moreover, Tax Court Rule of Practice and Procedure 231 provides simply that a motion for costs shall be filed "[a]fter the parties have settled all the issues in the case." We note also that the Tax Court has decided at least one case contrary to the position the government is espousing. In Minahan v. Commissioner, 88 T.C. 516 (1987), a petitioner was permitted to file a motion for costs after the entry of a stipulated decision incorporating the parties' stipulated agreement. Id. at 517. This was apparently so routine that it received no discussion and was merely reported in the facts of the case.
 
 
 27
 Pursuant to these stipulated decisions, the parties agreed that no deficiencies in Federal gift tax are due from, or overpayments due to, petitioners.... Petitioners thereafter moved this Court to award litigation costs pursuant to section 7430 and Rule 231.
 
 
 28
 Id.
 
 
 29
 In sum, we see no language in Sec. 7430(e) or in Rule 231(a)(2)(iii) requiring motions for costs pursuant to Sec. 7430 to be filed prior to the filing of the Tax Court's decision. Therefore, because petitioners' motions were filed within the limitations described by Rule 231(a)(2)(i), we believe the Tax Court incorrectly dismissed the motions as untimely. Therefore, we must address the Tax Court's alternative ground for dismissal.
 
 III.
 
 30
 The Tax Court declared that even if the petition had been timely, the petitioners were not entitled to an award of reasonable litigation costs because there was "no evidence the respondent acted unreasonably after the petitions were filed." (Emphasis added.) This finding was consistent with the Tax Court's position, announced in Baker v. Commissioner, 83 T.C. 822 (1984), that Sec. 7430 permits the court to consider only the government's conduct during litigation in determining the reasonableness of the "position of the United States in the civil proceeding." The petitioners, however, contend that the inquiry should extend to the government's conduct which compelled them to file their petition in the Tax Court.
 
 
 31
 This issue of statutory construction is one of first impression in this circuit, and it is one which has split other circuits. The District of Columbia, Eighth, Tenth, and Eleventh Circuits have held that only the government's in-court litigation position is relevant. Wickert v. Commissioner, 842 F.2d 1005 (8th Cir.1988); Ewing and Thomas, P.A. v. Heye, 803 F.2d 613 (11th Cir.1986); Baker v. Commissioner, 787 F.2d 637 (D.C.Cir.1986), aff'g, 83 T.C. 822 (1984); United States v. Balanced Fin. Management, Inc., 769 F.2d 1440 (10th Cir.1985). However, the First, Fifth, and Ninth Circuits permit the inquiry to extend to the government's pre-litigation conduct. Sliwa v. Commissioner, 839 F.2d 602 (9th Cir.1988); Powell v. Commissioner, 791 F.2d 385 (5th Cir.1986); Kaufman v. Egger, 758 F.2d 1 (1st Cir.1985). Because we find the latter view more attuned to the remedial and deterrent purposes of Sec. 7430, we adopt it for this circuit. The Ninth Circuit has aptly summarized the First and Fifth Circuits' interpretation of Sec. 7430.
 
 
 32
 In Kaufman v. Egger, 758 F.2d 1 (1st Cir.1985), the First Circuit cited the legislative history of section 7430 in support of its broad reading of the statute. Noting that the intent of Congress in passing section 7430 was to "deter abusive actions and overreaching by the Internal Revenue Service and ... enable individual taxpayers to vindicate their rights regardless of their economic circumstances," H.R.Rep. 97-404, 97th Cong., 2d Sess. 13 (1982), the Kaufman court determined that it would
 
 
 33
 frustrate the purpose of Section 7430 if [the court] were to interpret it in such a way that the IRS, after causing a taxpayer all kinds of bureaucratic grief at the administrative level, could escape attorney's fee liability by merely changing its tune after the initiation of a suit by the taxpayer.
 
 
 34
 Kaufman, 758 F.2d at 4. The court therefore found that Congress intended the liability of the IRS to be triggered by unreasonable IRS conduct regardless of at which stage in the proceedings such conduct occurred, and that pre-litigation conduct could be relevant in determining liability. Id.
 
 
 35
 The Fifth Circuit reached the same conclusion in Powell v. Commissioner by analogy to the Equal Access to Justice Act (EAJA) and the legislative history of its amendments, noting the similarity of the intent behind and purposes of the two statutes. See generally, Powell, 791 F.2d 385 (5th Cir.1986). Like the Kaufman court, the court in Powell noted that the intent of the statute might be frustrated were the court not to examine conduct by the government in administrative proceedings before the onset of the litigation in its consideration of the reasonableness of the government's position. ("If a taxpayer is forced to resort to litigation by an unreasonable IRS administrative position, Sec. 7430 does not require the captious position to be ignored. The taxpayer must be the plaintiff in Tax Court proceedings. If the IRS takes an arbitrary position and forces a taxpayer to file a suit, then, after the papers have been filed, becomes sweet reason, the taxpayer should be permitted to recover the cost of suing") 791 F.2d at 391.
 
 
 36
 Sliwa, 829 F.2d at 606. Thereafter, the Ninth Circuit reviewed the deterrent and remedial purposes of Sec. 7430 and adopted the broader reading of "position of the United States in a civil proceeding." Id. at 607. We too are convinced that the relevant inquiry extends to the reasonableness of the behavior which forced the taxpayer to incur the expenses related to the filing of a petition.[1] Because the Tax Court did not make that inquiry, we remand this issue for determination.
 
 IV.
 
 37
 Accordingly, we REVERSE the United States Tax Court's order of dismissal and REMAND for a determination regarding the reasonableness of the government's pre-litigation position and for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988
 
 
 [1]
 This interpretation is consistent with the current version of Sec. 7430, in particular Sec. 7430(c) as amended by the Tax Reform Act of 1986. That subsection provides that, in civil actions commenced after December 31, 1985, " 'position of the United States' includes--(A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based." 20 U.S.C. Sec. 7430(c)(4) (1988 Supp.). However, this definition is not dispositive of cases, such as this one, which were filed prior to December 31, 1985