ESTATE OF WILLIAM DAVIDSON MERCHANT III, DECEASED, MARGARET NORLING MERCHANT, ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Merchant v. Commissioner
Docket No. 34124-85
United States Tax Court
T.C. Memo 1990-160; 1990 Tax Ct. Memo LEXIS 141; 59 T.C.M. (CCH) 222; T.C.M. (RIA) 90160; March 26, 1990; As corrected March 27, 1990; As corrected April 10, 1990 John M. Youngquist, for the petitioner. Stephen R. Asmussen, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: This matter is before us at this time on a motion by petitioner [1] for litigation costs pursuant to Rule 231 and section 7430. [2] Respondent agrees that under section 7430(c)(2)(A)(ii) (now section 7430(c)(4)(A)(ii)) petitioner has substantially prevailed with respect to the issues and the amounts involved in this proceeding. Respondent also agrees that petitioner exhausted all administrative remedies available to him within the Internal Revenue Service. Therefore, the only issues remaining are: (1) whether petitioner has established under section 7430(c)(2)(A)(i) (now section 7430(c)(4)(A)(i)) that the position of respondent in this proceeding was unreasonable; and (2) if so, the amount of litigation costs to which petitioner is entitled. *144 FINDINGS OF FACT In a notice of deficiency dated June 6, 1985, respondent determined deficiencies in and additions to petitioner's income tax as follows: Addition to Tax
Year
Deficiency
Section 6653(b)
Section 6654
1980
$ 113,491
$ 56,746
$ 7,107 1981
151,340  75,670  11,653  On November 14, 1980, petitioner was convicted in a state court on two counts of brandishing firearms in violation of Cal. Penal Code section 417 (West 1988). As found by the Court of Appeals for the Ninth Circuit in a subsequent proceeding, United States v. Merchant, 760 F.2d 963 (9th Cir. 1985), the state court sentenced petitioner to (1) a three-year prison term which was suspended; (2) a three-year term of probation effective immediately; and (3) a six-month jail term, as a condition of probation. [3] As further conditions of probation, the trial court required petitioner to not possess any firearms and to consent to the search of "his person, residence or vehicle * * * at any time of day or night by a peace officer with or without a warrant." When petitioner and his counsel protested the sentence as being unduly *145 harsh and stated an intention to appeal, the trial court stayed the sentence pending the outcome of the appeal. On February 11, 1981, the assistant district attorney that prosecuted the case moved for a clarification or modification of the trial court's stay. At a hearing on February 27, 1981, the sentencing judge granted the prosecutor's motion, and ordered that "defendant will be reinstated on the terms of probation." Petitioner was not present at this hearing but his counsel was present and no objection was made to the motion. Early on March 3, 1981, the assistant district attorney and nine state law enforcement officers appeared at petitioner's home and, without his consent and despite his insistence that he was not on probation, conducted what was purported to be a probation search with the expectation of locating weapons because the assistant district attorney had received reports of gunfire on the property. *146 The officers continued the search even after being informed by telephone by petitioner's counsel that petitioner had not received notice of the order of February 27, 1981. The search ultimately revealed more than 80 firearms, laboratory equipment and chemical supplies used in the manufacture of phencyclidine ("PCP"), over $ 300,000 in cash, and financial records indicating an illegal business activity. With at least part of the results of the "probation search," the state officers later in the same day obtained by telephone a search warrant for petitioner's residence. The state officers also notified special agents of respondent's Criminal Investigation Division ("CID") of the results of their search. The CID agents subjected petitioner to a lengthy interview on the evening of March 3 at the Santa Cruz county jail where he had been incarcerated by the state officers. On March 4 and March 5 the CID agents were present at petitioner's home while the state officers continued their search. While there, the CID agents reviewed documents seized by the state officers. The searching of petitioner's home which took place subsequent to the warrantless "probation search" was conducted *147 pursuant to the search warrant obtained with the fruits of the initial search. With the evidence obtained in the above search, petitioner was subsequently indicted in the United States District Court for the Northern District of California for manufacturing PCP and related charges in violation of 21 U.S.C. section 841(a), (b), and (d) (1982). In the District Court petitioner moved to suppress the evidence seized in the search of his home. After an evidentiary hearing, the District Court denied petitioner's motion finding that petitioner was on probation at the time of the initial search and, in the alternative, that the state officers' reasonable good faith belief that petitioner was on probation precluded application of the exclusionary rule under the good faith exception to the rule as established by the Supreme Court in United States v. Leon, 468 U.S. 897 (1984). On appeal, the Court of Appeals found that petitioner was not on probation at the time the search was initiated because the stay which was granted by the state court applied to both the jail sentence and the probation, and the reinstatement order of the state court on February 27, 1981, was *148 a nullity because of the absence of notice to petitioner. United States v. Merchant, 760 F.2d 963 (9th Cir. 1985). Therefore, the Court of Appeals concluded that the initial search of petitioner's home was not a probation search and consequently the evidence seized in the search was suppressible. It was also concluded that the state officers could not have had a reasonable good faith objective belief in the validity of the search, and consequently the good faith exception to the exclusionary rule was not applicable. Since the search warrant obtained by the state officers by telephone was premised upon the fruits of the improper probation search, the evidence seized pursuant to the search warrant was also suppressible. A petition by the government for a writ of certiorari with respect to the decision of the Court of Appeals was initially granted by the Supreme Court but the writ was subsequently dismissed on March 24, 1987. United States v. Merchant, 480 U.S. 615 (1987). The decision of the Court of Appeals was filed on May 14, 1985. On June 6, 1985, respondent's notice of deficiency was mailed to petitioner. On March 12, 1986, respondent made *149 a jeopardy assessment under section 6861 against petitioner of the deficiencies determined in the notice of deficiency and thereafter seized the cash discovered in the search. The evidence obtained by the state officers in their search of petitioner's residence on March 3-5, 1981, was the basis of respondent's notice of deficiency and jeopardy assessment. After timely filing a petition in this Court, petitioner filed an action under section 7429 for a review of the jeopardy assessment in the United States District Court for the Northern District of California and moved to suppress the use of the evidence seized by the state officers in the search of petitioner's home. In an unpublished Memorandum Decision and Order dated June 12, 1987, the District Court granted the motion to suppress and on July 24, 1987, ordered respondent to abate the jeopardy assessment and to refund the money collected thereunder. On August 13, 1987, petitioner died and his mother, Margaret Norling Merchant, was appointed administrator of his estate. By letter dated November 24, 1987, petitioner's counsel was advised by respondent's District Counsel that respondent's position in the case before this Court *150 would be fully defended because in the District Counsel's opinion petitioner's Fourth Amendment rights did not survive petitioner's death and his administrator had no standing to object to the introduction of the disputed evidence in this case. However, after a series of discussions with members of his national office, the District Counsel decided that the case should be conceded and on April 11, 1988, a stipulated decision that there were no deficiencies or additions to tax due from petitioner was entered. On December 19, 1988, the motion for litigation costs was filed. OPINION In a proceeding before this Court to determine the amount of a tax or addition to tax, we are authorized to award to any prevailing party other than the United States or a creditor of the taxpayer a judgment for the reasonable litigation costs incurred by such prevailing party. Sec. 7430. [4] Since respondent agrees that petitioner exhausted the administrative remedies available to him in the Internal Revenue Service and has prevailed in this proceeding with respect to the amounts in controversy and the issues presented, the principal issue remaining is whether the position of respondent in the proceeding *151 was unreasonable. Petitioner bears the burden of proof on this issue. Rule 232(e); Sec. 7430(c)(2)(A). *152 In determining the reasonableness of respondent's position in cases of this nature which are filed in this Court we have concluded that the words "in the civil proceeding" as used in section 7430(a) limit "the position of the United States" to the government's conduct after the initiation of litigation by the taxpayer. See Baker v. Commissioner, 83 T.C. 822 (1984). Although reversing on other grounds, the District of Columbia Circuit approved our interpretation of section 7430. See Baker v. Commissioner, 787 F.2d 637, 641 and n.8 (D.C. Cir. 1986). In addition to the District of Columbia Circuit, the Eighth, Tenth, and Eleventh Circuits have approved this Court's interpretation of section 7430. Berks v. United States, 860 F.2d 841 (8th Cir. 1988); Ewing and Thomas, P.A. v. Heye, 803 F.2d 613, 615-616 (11th Cir. 1986); United States v. Balanced Financial Management, Inc., 769 F.2d 1440, 1450 (10th Cir. 1985); Ashburn v. United States, 740 F.2d 843, 848 (11th Cir. 1984). However, the First, Fifth, Sixth, and Ninth Circuits have concluded that section 7430 requires this Court to examine *153 the pre-litigation conduct of respondent in determining whether his position at trial was "reasonable" within the meaning of the statute. Comer Family Trust v. Commissioner, 856 F.2d 775, 780 (6th Cir. 1988); Powell v. Commissioner, 791 F.2d 385, 388-392 (5th Cir. 1986); Kaufman v. Egger, 758 F.2d 1, 4 (1st Cir. 1985); and Sliwa v. Commissioner, 839 F.2d 602, 607 (9th Cir. 1988). Since venue for appeal of the instant case lies in the Ninth Circuit, we are constrained to follow its holding in Sliwa v. Commissioner, supra.Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Petitioner contends that respondent's CID agents acted in bad faith by participating with the state officers in an unconstitutional search. Petitioner also contends that respondent knew or should have known that under the doctrine of collateral estoppel this Court was bound by the District Court's finding in its review of the jeopardy assessment under section 7429 [5] that the participation by the CID agents justified the suppression of the evidence obtained in the search. *154 We do not agree. First, because from the record before us we are unable to determine the extent of the participation by the CID agents in the search; and secondly, because the doctrine of collateral estoppel is not applicable. *155 In Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), the conditions which must be met for collateral estoppel to apply were summarized as follows: (1) The issue in the second suit must be identical in all respects with the one decided in the first suit. (2) There must be a final judgment in the first suit rendered by a court of competent jurisdiction. (3) The parties must be the same or their privies. (4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision. (5) The controlling facts and applicable legal principles must remain unchanged from those in the prior litigation. [Citations omitted.] Since there is no appeal from the District Court's review of the jeopardy assessment, its decision constitutes a final judgment. Sec. 7429(f); Zuluaga v. United States, 774 F.2d 1487 (9th Cir. 1985). Furthermore, Margaret Norling Merchant is in privity with William Davidson Merchant III by virtue of her position as administrator of his estate. Brown v. Fletcher's Estate, 210 U.S. 82 (1908); Fouke v. Schenewerk, 197 F.2d 234, 236 (5th Cir. 1952). *156 It is clear, therefore, that in the case before us the second and third requirements for collateral estoppel are satisfied. While the presence or absence of the first and fourth conditions for the application of collateral estoppel are not so clear we need not consider them since the fifth condition is obviously absent in this case. This is true because in the proceeding under section 7429 the District Court was empowered to conduct only a summary proceeding which is unrelated for substantive and procedural purposes to any subsequent action in this Court. See S. Rept. No. 94-938 (1976), 1976-3 C.B. 403, which states: A determination made under new section 7429 will have no effect upon the determination of the correct tax liability in a subsequent proceeding. The proceeding under [section 7429] is to be a separate proceeding which is unrelated, substantively and procedurally, to any subsequent proceeding to determine the correct tax liability, either by action for refund in a Federal district court or the Court of Claims or by a proceeding in the Tax Court. Consequently, the doctrine of collateral estoppel is not applicable and any finding by the District *157 Court that the CID agents participated in the illegal search is not binding on this Court in a proceeding under section 7430. Therefore, respondent was not collaterally estopped from litigating in the proceeding in this Court any finding made by the District Court in the proceeding under section 7429. Peck v. Commissioner, supra.
We also find that respondent's position set forth in the notice of deficiency and respondent's handling of the case to its conclusion were not unreasonable. The legislative history of section 7430 provides the following guidelines for determining whether respondent's conduct was reasonable: The committee intends that the determination by the court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in the record. Other factors the committee believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for *158 purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant. * * * [H. Rept. 97-404, at 12 (1981).] Thus, in order to determine whether respondent acted reasonably, we must consider the facts and circumstances known to him which formed the legal basis for the position he took during the litigation. DeVenney v. Commissioner, 85 T.C. 927, 931 (1985). Furthermore, the use by respondent of inadmissible evidence as the basis for making a determination does not automatically void the statutory notice. Graham v. Commissioner, 82 T.C. 299, 310 (1984), affd. 770 F.2d 381 (3d Cir. 1985); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974). When the notice of deficiency is not supported by any admissible evidence the effect is not to void the notice but to shift to respondent the burden of going forward with the evidence. United States v. Janis, 428 U.S. 433, 441-442 (1976); Zuhone v. Commissioner, 883 F.2d 1317 (7th Cir. 1989), affg. a Memorandum Opinion of this Court. The ultimate burden of proof *159 remains on petitioner. Kluger v. Commissioner, 91 T.C. 969, 976-977 (1988). Therefore, if in this case petitioner had shown that there was no admissible evidence to support the determination made in the deficiency notice, that showing alone would not compel us to conclude that respondent's position was unreasonable. The position of the government in seeking the admission of the evidence in this proceeding is also not without support. It is well established that the exclusionary rule is not applicable to evidence seized illegally by state officers without the involvement of Federal authorities when offered in a noncriminal Federal proceeding. United States v. Janis, 428 U.S. 433 (1976); Black Forge, Inc. v. Commissioner, 78 T.C. 1004 (1982); Guzzetta v. Commissioner, 78 T.C. 173 (1982). In United States v. Janis,supra, the Supreme Court, while noting that such evidence could not be admitted in a state or Federal criminal trial, refused to extend the exclusionary rule to forbid the use in a Federal civil tax proceeding of evidence seized by a state criminal law enforcement agent in violation *160 of the taxpayer's constitutional rights. 428 U.S. at 460. The holding in Janis was premised specifically on the assumption that there was no Federal involvement in the unconstitutional search. 428 U.S. at 455 n.31. In attempting to convince us that the CID agents were involved in the illegal search, petitioner relies solely upon the District Court's finding with respect to the participation by the agents. However, we have hereinbefore concluded that the District Court's finding is without collateral effect in this proceeding. Consequently, in the absence of any proof to the contrary, we must assume that the CID agents were not involved and under Janis the evidence seized by the state officers would have been admissible in this proceeding. We note that in its review of the jeopardy assessment the District Court considered such evidence inadmissible under Adamson v. Commissioner, 745 F.2d 541 (9th Cir. 1984). In Adamson, the Ninth Circuit followed the Supreme Court's holding in United States v. Janis, supra, and allowed to be admitted in a Federal civil trial evidence that was assumed to have been illegally *161 obtained by state police. In its review of the jeopardy assessment, the District Court relied on a statement by the Court of Appeals in Adamson that "[the contention of the taxpayer] presents us with the question of whether a bad faith violation of an individual's fourth amendment rights [by state police] requires application of the exclusionary sanction in a civil tax proceeding. We believe that it does * * *." Adamson v. Commissioner, supra at 545. However, that statement is dictum because the Court of Appeals in Adamson did not find bad faith. It is therefore still an open question in the Ninth Circuit whether a bad faith violation on the part of state authorities in obtaining evidence (which concededly existed here) requires exclusion of that evidence in a Federal tax proceeding. While such dictum may not have foretold success for his position, it is not unreasonable for respondent to pursue litigation that tends to clarify the law, even though his chances of success might have been slim. Don Casey Co. v. Commissioner, 87 T.C. 847, 862 (1986). Subsequent to the adverse ruling by the District Court in the review of the jeopardy assessment, *162 respondent considered the possibility of defending his determination in this Court on the ground that petitioner's fourth amendment rights did not survive his death and the administrator of his estate would not be permitted to assert such rights in this proceeding. Again, there is some support for this theory. See, e.g., Ravellette v. Smith, 300 F.2d 854, 857 (7th Cir. 1962). Finally, the fact that respondent ultimately lost in the District Court and conceded the case in this Court does not mean that petitioner is entitled to an award of litigation costs. Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986). Therefore, in view of all of the foregoing we are satisfied that respondent's position in this case was not unreasonable, and accordingly, petitioner is not entitled to an award of litigation costs. In view of our conclusion we need not consider the reasonableness of the claimed costs. An appropriate order will be entered denying the petitioner's motion. Footnotes
1. Technically petitioner in this case is the Estate of William Davidson Merchant III, Deceased, Margaret Norling Merchant, Administrator. However, the petition was filed by Mr. Merchant prior to his death on August 13, 1987, and the factual background of the case began in November of 1980. Consequently, when used herein petitioner↩ shall refer to Mr. Merchant or to his estate as the context requires. 2. All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended and as in effect for the years at issue.↩
3. Under California law, when a jail sentence is imposed as a condition of probation, the jail term is not regarded as a sentence but as part of the supervised effort towards rehabilitation. Petersen v. Dunbar, 355 F.2d 800, 802↩ (9th Cir. 1966).
4. Section 7430 as made applicable to civil actions or proceedings commenced after February 28, 1983 and before January 1, 1986, by section 292(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 648, states in relevant part as follows: (a) IN GENERAL. -- In the case of any civil proceeding which is -- (1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and (2) brought in a court of the United States (including the Tax Court and the United States Claims Court), the prevailing party may be awarded a judgment for reasonable costs incurred in such proceeding. * * * (c) DEFINITIONS. -- For purposes of this section -- * * * (2) PREVAILING PARTY. -- (A) IN GENERAL. -- The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which -- (i) establishes that the position of the United States in the civil proceeding was unreasonable, and (ii)(I) has substantially prevailed with respect to the amount in controversy, or (II) has substantially prevailed with respect to the most significant issue or set of issues presented. Section 1551(e) of the Tax Reform Act of 1986, Pub.L. 99-514, 100 Stat. 2085, 2753, amended section 7430(c) by adding a new paragraph (4) defining "position of the United States." Section 7430(c)(4) applies generally to civil proceedings commenced after December 31, 1985 and provides as follows: (4) POSITION OF THE UNITED STATES. -- The term "position of the United States" includes -- (A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based. Section 6239(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub.L. 100-647, 102 Stat. 3342, 3743 et seq., further expanded the definition of the "position of the United States" and renumbered this provision as 7430(c)(7). The new section 7430(c)(7) applies to proceedings commenced after November 10, 1988 and provides as follows: (7) POSITION OF THE UNITED STATES. -- The term "position of the United States" means -- (A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and (B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of -- (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency. Because the instant proceeding was commenced prior to January 1, 1986, these changes do not affect our holding in this case.↩
5. Section 7429 as in effect during 1980 and 1981 reads in pertinent part as follows: SEC. 7429 REVIEW OF JEOPARDY ASSESSMENT PROCEDURES. * * * (b) JUDICIAL REVIEW. -- (1) ACTIONS PERMITTED. -- Within 30 days after the earlier of -- (A) the day the Secretary notifies the taxpayer of his determination described in subsection (a)(3), or (B) the 16th day after the request described in subsection (a)(2) was made, the taxpayer may bring a civil action against the United States in a district court of the United States for a determination under this subsection. (2) DETERMINATION BY DISTRICT COURT. -- Within 20 days after an action is commenced under paragraph (1), the district court shall determine whether or not -- (A) the making of the assessment under section 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and (B) the amount so assessed or demanded as a result of the action taken under section 6851, 6861, or 6862, is appropriate under the circumstances. (3) ORDER OF DISTRICT COURT. -- If the court determines that the making of such assessment is unreasonable or that the amount assessed or demanded is inappropriate, the court may order the [respondent] to abate such assessment, to redetermine (in whole or in part) the amount assessed or demanded, or to take such other action as the Court finds appropriate. * * * (f) FINALITY OF DETERMINATION. -- Any determination made by a district court under this section shall be final and conclusive and shall not be reviewed by any other court. (g) BURDEN OF PROOF. -- (1) REASONABLENESS OF TERMINATION OR JEOPARDY ASSESSMENT. -- In an action under subsection (b) involving the issue of whether the making of an assessment under section 6851, 6861, or 6862 is reasonable under the circumstances, the burden of proof in respect to such issue shall be upon the [respondent]. (2) REASONABLENESS OF AMOUNT OF ASSESSMENT. -- In an action under subsection (b) involving the issue of whether an amount assessed or demanded as a result of action taken under section 6851, 6861, or 6862 is appropriate under the circumstances, the [respondent] shall provide a written statement which contains any information with respect to which his determination of the amount assessed was based, but the burden of proof in respect of such issue shall be upon the taxpayer.↩