T.C. Memo. 1999-60

UNITED STATES TAX COURT

EDDIE MILLS, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6696-96.                       Filed March 3, 1999.

<u>Mary Ann Maxson</u>, for petitioner.

<u>Elaine L. Sierra</u> and <u>Thomas G. Schlier</u>, for respondent.

MEMORANDUM OPINION

DEAN, <u>Special Trial Judge</u>:  This matter is before the Court
on petitioner's motion for award of reasonable litigation and
administrative costs under section 7430[1] and Rules 230, 231, and
232.

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code as amended.  All Rule references are to
the Tax Court Rules of Practice and Procedure.

On January 9, 1996, respondent issued to petitioner a statutory notice of deficiency for tax year 1993 determining a deficiency in income tax of $6,166 and a section 6662(a) accuracy-related penalty of $1,233.

The deficiency resulted from respondent's determination that petitioner was not entitled to: (a) Itemized deductions for home mortgage interest and charitable contributions; (b) deductions for dependency exemptions; and (c) head of household filing status. Respondent determined that petitioner was liable for the section 6662 accuracy-related penalty because part of the underpayment of tax for the year was due to negligence.

Petitioner, then a resident of Menlo Park, California, timely filed his petition on April 12, 1996, and it was followed by respondent's answer, filed timely on June 3, 1996. On October 22, 1996, the Court issued a notice setting the case for trial on January 6, 1997, at San Francisco, California. The case, however, was settled before trial, and a stipulation of settlement was filed February 26, 1997. The stipulation of settlement reflects that no deficiency or overpayment is due and that there is no liability for the accuracy-related penalty under section 6662.

Petitioner filed a motion for the award of litigation and administrative costs, in response to which respondent filed a notice of objection. Neither party requested a hearing in this

case, and we conclude that none is necessary to decide this motion. See Rule 232(a)(2).

The issues for decision are: (1) Whether respondent's position in the underlying proceedings was substantially justified; and (2) whether the amount claimed by petitioner as attorney's fees and costs is reasonable.

## Background

As a result of an examination of petitioner's return, respondent disallowed for lack of substantiation: (a) Petitioner's deduction of home mortgage interest and charitable contributions; (b) amounts deducted for dependency exemptions for two children of petitioner's sister; and (c) petitioner's claim of head of household filing status.

Petitioner sent a letter to an Appeals officer of respondent on October 30, 1996, 4½ months after the answer was filed. In the letter, petitioner's representative explained that during the taxable year at issue petitioner lived in a house with his mother, Jeanette Mills, his sister, Linda Mills Robertson, and his sister's three children. According to the letter, petitioner's sister was receiving "AFDC" payments. Petitioner and his mother "shared a joint checking account" in which were deposited funds from his mother's income and petitioner's salary, the letter advised. It further explained that "As a courtesy to her son," petitioner's mother paid all the family bills from the

joint checking account; checks written on the account bore her signature only.

According to the October 30, 1996, letter, the family home had originally been titled jointly in the name of petitioner's mother and father. The letter states that when petitioner's father died in 1982, petitioner's mother added petitioner's sister's name to the home mortgage held by Great Western Mortgage Co. On August 1, 1989, petitioner's sister caused to be recorded a "grant deed" (copy attached to the letter of October 30, 1996) conveying "her joint tenancy interest" in the home to her mother, but Great Western Mortgage Co. refused to remove the sister's name from the mortgage as a joint borrower.

Petitioner and his mother in 1990 and 1993 jointly borrowed $27,000 and $74,000, respectively, from Household Finance Corp. of California evidenced by deeds of trust (copies attached to the letter of October 30, 1996).

Sent with the October 30, 1996, letter was a copy of a 1993 Federal income tax return for petitioner's mother, Jeanette Mills, in which she reported adjusted gross income of $2,816, a copy of a compilation listing church contributions in her name, and a copy of a handwritten worksheet "showing support" of the three children of petitioner's sister.

On November 7, 1996, about a week after receiving petitioner's October 30, 1996, letter, respondent's Appeals

officer offered to settle petitioner's case, agreeing to allow $15,832 of the $19,414 in disallowed itemized deductions and conceding the accuracy-related penalty in full. The only adjustments to the return not compromised under the offer of settlement were disallowance of the deduction for two dependency exemptions and denial of petitioner's claimed head of household filing status.

Respondent's offer was not accepted, the case was referred to District Counsel for trial on November 21, 1996, and a "Branerton"[2] conference was held on December 12, 1996.

On December 18, 1996, near close of business at 4:52 p.m., petitioner's representative faxed a document entitled "Dependency Support Worksheet" to respondent that contained more detailed and some different information than had previously been provided. On December 19, 1996, after close of business, at 5:57 p.m. petitioner's representative faxed to respondent a copy of a "grant deed" recorded June 29, 1990, conveying title to the family home from Jeanette Mills to Jeanette Mills and petitioner as joint tenants.

The parties agreed to settle the case for no deficiency and no overpayment the very next day, December 20, 1996.

---

[2] See Branerton Corp. v. Commissioner, 61 T.C. 691 (1974) (requires informal discovery, including discussion, deliberation, and an interchange of ideas, thoughts, and opinions between the parties).

## Discussion

Section 7430(a), as in effect at the time that the petition in this case was filed, provides that in the case of any administrative or court proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty, the "prevailing party" may be awarded a judgment for reasonable administrative costs incurred in connection with any administrative proceedings within the Internal Revenue Service (IRS) and reasonable litigation costs incurred in connection with such court proceedings. See sec. 7430(a), (c).

To qualify as a prevailing party under the statute, petitioner must establish that: (1) The position of the United States in the proceeding was not substantially justified;[3] (2) he substantially prevailed with respect to the amount in controversy or with respect to the most significant issue presented; and (3) he met the net worth requirement of 28 U.S.C. section 2412(d)(2)(B) on the date the petition was filed. See sec. 7430(c)(4)(A).

---

[3] Because the proceedings in this case were commenced before the date of enactment of the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 701, 110 Stat. 1452, 1463, respondent does not bear the burden of proving that the position of the United States was substantially justified. See Maggie Management Co. v. Commissioner, 108 T.C. 430, 441 (1997).

Petitioner must also establish that he exhausted the administrative remedies available to him within the IRS and that he did not unreasonably protract the proceedings. See sec. 7430(b)(1), (4). Petitioner bears the burden of proof with respect to each of the preceding requirements. See Rule 232(e).

Whether the Commissioner's position is substantially justified depends upon a finding of reasonableness based upon both law and fact. See Pierce v. Underwood, 487 U.S. 552, 565 (1988); Powers v. Commissioner, 100 T.C. 457, 470 (1993), affd. in part, revd. in part on another issue and remanded 43 F.3d 172 (5th Cir. 1995). The phrase "substantially justified" does not mean justified to a high degree but "'justified in substance or in the main'--that is, justified to a degree that could satisfy a reasonable person". Pierce v. Underwood, supra at 565.

The taxpayer need not show bad faith to establish that the Commissioner's position was not substantially justified for purposes of a motion for administrative or litigation costs under section 7430. See Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Powers v. Commissioner, supra at 471.

The Commissioner's concession of a case is a factor to be considered. See Powers v. Commissioner, supra. The fact, however, that the Commissioner eventually concedes the case is not by itself sufficient to establish that a position is unreasonable. See Estate of Merchant v. Commissioner, 947 F.2d

1390, 1395 (9th Cir. 1991), affg. T.C. Memo. 1990-160; Powers v. Commissioner, supra at 471; Sokol v. Commissioner, 92 T.C. 760, 767 (1989).

The term "administrative proceeding" means any procedure or other action before the IRS.  Sec. 7430(c)(5).  The term "reasonable administrative costs" includes only the costs incurred on or after the earlier of (i) the date of the receipt by the taxpayer of the notice of the decision of the IRS Office of Appeals (Appeals Office), or (ii) the date of the notice of deficiency.  Sec. 7430(c)(2).  The "position of the United States" is the position taken in an administrative proceeding fixed by the earlier of the date the taxpayer receives the decision of the Appeals Office, or the date of the notice of deficiency in the case.  Sec. 7430(c)(7)(B).

As there is no evidence of the receipt by petitioner of a decision by the Appeals Office, the relevant document is the notice of deficiency.  The position of the United States in the administrative proceeding was determined by the notice of deficiency issued January 9, 1996.

Respondent took a position in the judicial proceeding on June 3, 1996, when the answer was filed in the case.  See sec. 7430(c)(7)(A); California Marine Cleaning, Inc. v. Commissioner, T.C. Memo. 1998-311; Kahn-Langer v. Commissioner, T.C. Memo. 1995-527, Lockett v. Commissioner, T.C. Memo. 1994-144 (citing

Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo. 1991-144).

Here it is not necessary to analyze respondent's position separately on each of these dates as respondent's position was the same at both times. See Swanson v. Commissioner, 106 T.C. 76, 87 (1996).

In order to determine whether respondent's position in the administrative and judicial proceedings was substantially justified, we may analyze respondent's position in the context of what caused respondent to take the position. See Lennox v. Commissioner, 998 F.2d 244, 247-249 (5th Cir. 1993), revg. in part and remanding T.C. Memo. 1992-382. We may also look at the manner in which respondent maintained the position. See Wasie v. Commissioner, 86 T.C. 962, 969, (1986); Kahn-Langer v. Commissioner, supra.

We may consider events preceding the date the notice of deficiency was issued to determine what caused respondent to take the position. See Lennox v. Commissioner, supra; Uddo v. Commissioner, T.C. Memo. 1998-276; Williford v. Commissioner, T.C. Memo. 1994-135. The reasonableness of respondent's position necessarily requires considering what respondent knew at the time the position was taken. See Rutana v. Commissioner, 88 T.C. 1329, 1332 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930, (1985); Triplett v. Commissioner, T.C. Memo. 1998-313.

We shall examine each issue raised by respondent to determine whether respondent's position was substantially justified. See Powers v. Commissioner, 51 F.3d 34, 35 (5th Cir. 1995); Swanson v. Commissioner, supra at 102.

Itemized Deductions

Charitable Contributions

Respondent contends that respondent's position denying petitioner's deductions for charitable contributions for lack of substantiation was substantially justified and properly maintained.

Deductions for charitable contributions are allowable only to the extent verified under Treasury regulations. See sec. 170(a)(1). The applicable regulations require a taxpayer to maintain for each contribution either a canceled check, a receipt from the donee containing certain information, or other reliable written records. See sec. 1.170A-13(a)(1), Income Tax Regs.

The deduction for charitable contributions is to be claimed by the person who made the contribution. See Herring v. Commissioner, 66 T.C. 308, 312 (1976). Further, it is the source of the funds that determines who made the contribution. See Clemens v. Commissioner, 8 T.C. 121, 126 (1947); Finley v. Commissioner, T.C. Memo. 1982-411, affd. without published opinion 720 F.2d 1289 (5th Cir. 1983). A taxpayer, however, is not entitled to a deduction for charitable contributions made by

a person to whom he has transferred money, unless the taxpayer previously designated that the money transferred was to be used for charitable purposes. See Herring v. Commissioner, supra; Miller v. Commissioner, T.C. Memo. 1982-491; Wilson v. Commissioner, a Memorandum Opinion of this Court dated Feb. 21, 1952 (taxpayer not allowed to deduct the contributions of his mother to whom he had given money).

In this case, before the issuance of the notice of deficiency, petitioner supplied respondent with canceled checks made out to charitable organizations and a statement of contributions from the East Palo Alto Seventh-Day Adventist Church. The canceled checks were signed by petitioner's mother (described by petitioner as "custodian of the family assets"), and the statement of contributions listed her as the contributor. While the evidence was sufficient to substantiate that petitioner's mother made charitable contributions,[4] it did not substantiate that petitioner made any charitable contributions for the year.

We find respondent's position on this issue to have been reasonable in fact and law.

---

[4] We note from the copy of petitioner's mother's 1993 Federal income tax return in the record that she claimed the standard deduction. Apparently the standard deduction is larger than the total itemized deductions, including charitable contributions, to which she would be entitled.

Home Mortgage Interest

Respondent argues that when the statutory notice was issued and the answer was filed, petitioner had not established that he held a legal or equitable ownership interest in the family residence, a prerequisite to the interest deduction. We agree with respondent.

A taxpayer other than a corporation may not deduct personal interest paid or accrued during the taxable year. See sec. 163(h). Interest, however, paid by a taxpayer on a mortgage on real property <u>of which he is the legal or equitable owner</u> may be deducted, even if the taxpayer is not directly liable on the note secured by the mortgage. See sec. 1.163-1(b), Income Tax Regs. But the deduction is limited to the amount of "qualified residence interest". See sec. 163(h)(2)(D).

A "qualified residence" is the principal residence <u>of the taxpayer</u> and one other residence selected by the taxpayer which is used as a residence by the taxpayer. Sec. 163(h)(5)(A).

"Qualified residence interest" includes interest paid or accrued on "acquisition indebtedness" or "home equity indebtedness" with respect to a qualified residence <u>of the taxpayer</u>. Sec. 163(h)(3)(A).

"Acquisition indebtedness" is indebtedness incurred in acquiring, constructing, or substantially improving a qualified residence of the taxpayer that is secured by the residence. It

also includes indebtedness secured by a qualified residence of the taxpayer incurred in refinancing acquisition indebtedness. Sec. 163(h)(3)(B).

"Home equity indebtedness" is indebtedness secured by a qualified residence that is other than acquisition indebtedness. Sec. 163(h)(3)(C)(i). Home equity indebtedness may not exceed the fair market value of the qualified residence reduced by the acquisition indebtedness, not to exceed $100,000. See sec. 163(h)(3)(C)(i) and (ii).

"Secured debt" is debt that is secured by an instrument such as a mortgage or deed of trust: (a) That makes the interest of the debtor in the qualified residence security for payment; (b) under which, in the case of default, the residence could be subjected to the satisfaction of the debt; and (c) that is recorded or otherwise perfected under State law. Sec. 1.163-10T(o)(1), Temporary Income Tax Regs., 52 Fed. Reg. 48417 (Dec. 22, 1987).

There is nothing in the record that shows that, before October 30, 1996, petitioner produced any evidence of his ownership interest in the family home. In the October 30, 1996, letter petitioner's representative provided respondent with some indirect evidence, copies of deeds of trust[5] on which petitioner

---

[5] An instrument in use in some States, including
(continued...)

was named cotrustor with his mother.  Naming a person in a mortgage instrument, however, does not mean that the person owns the property used as security.  Petitioner's sister's name remained on the Great Western mortgage after she had apparently conveyed her ownership interest in the property to her mother.[6] See also Seattle-First Natl. Bank v. Hart, 573 P.2d 827 (Wash. Ct. App. 1978).

Petitioner offered no direct evidence of his legal or equitable ownership interest in the family home until December 19, 1996, when a copy of the "grant deed" was produced showing the conveyance of title in the home from his mother to him and his mother jointly.  Respondent agreed to settle the case the very next day, conceding the mortgage interest issue.

Even if respondent had concluded earlier, from the deed of trust instruments alone, that petitioner was the legal or equitable owner of the family home, petitioner failed to provide evidence that he had paid mortgage interest from his own funds.  Usually, a deduction with respect to a joint obligation is allowable to the party who makes the payment out of his own

---

[5](...continued)
California, that takes the place of and serves the same use as a mortgage.  In re Moore's Estate, 286 P.2d 939, 944 (Cal. Dist. Ct. App. 1955); Bank of Italy Natl. Trust & Sav. Association v. Bentley, 20 P.2d 940, 944 (Cal. 1933).

[6]  There is nothing in the record to show that petitioner's sister ever obtained an ownership interest in the property.

funds.  See <u>Finney v. Commissioner</u>, T.C. Memo. 1976-329, and cases cited therein.  This may require that the taxpayer claiming the deduction produce evidence sufficient to trace the payment directly to such funds.  See <u>id.</u>  The record in this case contains no evidence that petitioner has ever provided to respondent evidence that would allow a tracing of mortgage interest payments to deposits of his separate funds into the account he "shared" with his mother.[7]

We therefore find that respondents's position on the mortgage interest deduction was reasonable in fact and in law.

<u>Dependency Exemptions</u>

A taxpayer is allowed as a deduction an exemption amount for each dependent who is a child of the taxpayer under a certain age or whose gross income is less than the exemption amount.  See sec. 151(c)(1).  A "dependent" includes a niece or a nephew over half of whose support for the taxable year is received from the taxpayer.  Sec. 152(a).  Under section 152(a), the taxpayer bears

---

[7] Petitioner also has not shown that the interest payments at issue were with respect to home equity indebtedness that did not exceed the fair market value of the residence reduced by the acquisition indebtedness.  Sec. 163(h)(3)(C)(i).  Respondent cites sec. 1.163-10T(b), (c), and (d), Temporary Income Tax Regs., 52 Fed. Reg. 48410-48411 (Dec. 22, 1987), for the proposition that petitioner failed to prove that the loans did not exceed the adjusted purchase price of the home.  But the rule for equity indebtedness was changed for tax years beginning after Dec. 31, 1987, by the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100-203, sec. 10102(a), and 101 Stat. 1330-384, amending sec. 163(h)(3).

the burden of proving that he provided over one-half of a dependent's support for any year for which the taxpayer claims an exemption. See Seraydar v. Commissioner, 50 T.C. 756, 760 (1968). In the absence of credible evidence regarding the total amount of support received by each claimed dependent from all sources during the taxable year, a taxpayer cannot be said to have carried the burden of proving that he provided more than one-half that amount. See Blanco v. Commissioner, 56 T.C. 512, 514 (1971); Stafford v. Commissioner, 46 T.C. 515, 518 (1966). It was respondent's position that petitioner had not shown that he had contributed over half the support of his niece and one nephew.

In the motion for litigation and administrative costs, it is alleged that before the issuance of the notice of deficiency, petitioner made an "attempt to submit the necessary substantiation as requested by the examination letter." It is also alleged that additional documentation was submitted and, apparently, ignored. Petitioner fails, however, to advise either the Court or respondent as to the nature of the substantiation allegedly submitted.

Exhibit 2 to petitioner's representative's letter of October 30, 1996 (attached to respondent's notice of objection to petitioner's motion), is described in the letter as a document submitted during the examination of the return. It is a copy of

handwritten notations on accounting paper that the letter characterizes as "a worksheet showing support".  It purports to compute the total monthly support contributed by petitioner for petitioner's entire household.  The latter sum is divided by 6 to compute the "house-hold support" per person that petitioner alleges he provided for the year.  The notations indicate an amount contributed by "Linda AFDC/Stamps (4)" and determines that the amount contributed by petitioner is more than half the total support of each dependent.

We see nothing in the record that would substantiate what were essentially mere claims by petitioner that he had supplied half the support for his niece and nephew.  It seems that at the time respondent took a position in the notice of deficiency and the answer, petitioner had not substantiated any of the claimed household payments.

Certainly the ownership of the family home (and an amount of support in the form of fair rental value of the home) was in doubt until the day before the agreed settlement.  Exhibit 2 to petitioner's letter of October 30, 1996, alleges that total family support supplied by petitioner included $5,670 for food. Unexplained is part V of petitioner's mother's Schedule C of her 1993 return (Exhibit 1 to petitioner's letter of October 30, 1996).  The Schedule C pertains to her "child care business" in which she "was paid by the County of Santa Clara for providing

care to her three resident grandchildren".  The Schedule C shows a business expense of $2,416 for food and $212 for "fast food". The record does not indicate how, if at all, these expenses figure in any of petitioner's support computations.

Eventually, on December 18, 1996, petitioner submitted a more detailed "Dependency Support Worksheet" with some additional and some different figures (still without substantiation) from those originally submitted in the letter of October 30, 1996. The case was settled 2 days later.

We find in this case that respondents's position denying deductions for dependency exemptions was reasonable in fact and in law.

Head of Household Filing Status

Individuals who qualify as heads of households have special tax rates applied to their taxable income.  See sec. 1(b).  As relevant here, in order to qualify for head of household treatment, a taxpayer must maintain a household which for more than one-half of the taxable year is the principal place of abode of a dependent of the taxpayer.  See sec. 2(b)(1)(A)(ii).

We have found that respondent's position that petitioner had no dependents for the taxable year was reasonable.  Because petitioner would be eligible for head of household filing status only if, among other requirements, his niece and nephew were his dependents, it follows that respondent's position that petitioner

was not entitled to head of household filing status was reasonable.

Accuracy-Related Penalty Under Section 6662

Section 6662 imposes a penalty equal to 20 percent of the portion of the underpayment of tax attributable to negligence or disregard of rules or regulations. See sec. 6662(a) and (b)(1). Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. See sec. 6662(c).

Petitioner has not disputed the legal standard applied by respondent here but disputes only whether respondent had a reasonable factual basis to believe that the legal standard applied to him. This case is primarily one of substantiation. When respondent issued the statutory notice of deficiency and filed the answer in this case, petitioner had not substantiated deductions for charitable contributions, home mortgage interest, and dependency exemptions. Indeed, although respondent has settled the issues in this case, petitioner has yet provided only indirect or inferential evidence for most of the issues involved here. We conclude that the position of respondent had a reasonable basis in fact based on the information produced during the examination in this case before trial.

We hold that respondent's position on the issues in this case was substantially justified and that petitioner is not entitled to an award for litigation and administrative costs under section 7430.  We thus need not address the reasonableness of the costs claimed by petitioner.  Petitioner's motion will therefore be denied.

To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered</u>.